Charles Etscheid, Plaintiff-Appellee, v. The Police Board of the City of Chicago, et al., Defendants-Appellants.

Gen. No. 49,074.

First District, Second Division.

March 19, 1964.

 

John C. Melaniphy, Corporation Counsel, of Chicago (Sydney R. Drebin, Assistant Corporation Counsel, and Allen Hartman, Special Assistant Corporation Counsel, of counsel), for appellants.

Elmer Gertz, of Chicago (Sydney Z. Karasik, of counsel), for appellee.

MR. JUSTICE FRIEND delivered the opinion of the court:

This case comes up on appeal from a judgment order of the Superior Court which reversed an order of the Police Board of the City of Chicago, and from an order of the Superior Court denying the board's subsequent motion to vacate the judgment order. Review was sought in the trial court under the Administrative Review Act (Ill Rev Stats 1961, c 110, §§ 264–279) of the board's order discharging plaintiff Charles Etscheid from his position as a policeman and member of the Chicago Police Department because, as the board found, he had been guilty of conduct unbecoming a police officer.

Plaintiff had appeared in public attired in women's undergarments. The incident occurred August 31, 1961, about 10:00 p. m. Earlier that evening, after an

argument with his wife, he sought to assuage his anger by putting on some of her lingerie under his own street clothes. Without saying anything to his wife he left to check the house of a friend on vacation. After taking care of this errand he began to realize his predicament and decided to ride around to find a place where he could change his clothes. He stopped in a parking area adjacent to a tavern in Robbins, Illinois, where he was seen by an off-duty Robbins police officer. When the officer came up to the car he found that plaintiff was wearing a woman's bra, slip, and panties, with his shirt around his shoulders, his trousers around his knees, and his raincoat across his lap. The officer took plaintiff into custody. Plaintiff did not at any time deny that this event had occurred.

On review the Superior Court found that the decision of the board to discharge plaintiff was unreasonable and arbitrary, and therefore contrary to law. The court reversed the decision of the board and ordered plaintiff restored to duty. The board's motion to vacate the judgment order was denied. The board, appealing, contends (1) that its finding and decision are fully supported by the evidence in the record and not against the manifest weight thereof, and (2) that its finding and decision are neither unreasonable nor arbitrary.

The scope of administrative review is limited by statute; section 11 (§ 274) of the Administrative Review Act provides that "the findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." In Nolting v. Civil Service Commission, 7 Ill App2d 147, 129 NE2d 236 (1955), a per curiam opinion, there is a comprehensive and definitive discussion of the powers and limitations of the police board and of the courts in reviewing the actions of the board. The court pointed out (152–53) that proceedings such as the one here

126

under consideration do not involve contests between litigants over civil rights but are, in effect, appeals from orders of public officials in the executive department to public officials in the judicial department, and commented that "it is easy in such cases for courts to fall into the error of assuming their function to be charismatic and to take on the character of a supercommission or superchief of police." Later in the opinion the court said (160): "We have only to examine the Criminal Code, the Cities and Villages Act, the City Ordinances and numerous other statutory provisions to become aware of the enforcement difficulties confronting the Police Department." To carry out these numerous responsibilities, the court continued, requires a department staffed with proper personnel, well trained, well organized, and strictly disciplined. In the course of its opinion the court said (161–63):

> "Punitive discipline in the Police Department of the City of Chicago is initiated by the Commissioner of Police. He files charges with the Civil Service Commission only after he has reached the conclusion that the offender should be discharged from the force. Thus at the outset these proceedings involve the exercise of judgment by an expert. In fact, we must assume that the head of the Police Department of the second largest city in the country is a leading expert in police matters. Not only is he in position to exercise a superior judgment with respect to the particular individual involved but he can judge the effect of the disciplinary action taken on the morale of his entire force. What happens to discipline when a judge substitutes his judgment for the judgment of this expert and restores to office and to a position under the Chief of Police one whom the Chief has deemed unfit for that pur-

127

pose? The result is described in a book entitled 'Police Administration' by O. W. Wilson, a leading authority on the subject, as follows, (p 371):

" 'From that time on [the chief of police] will have a subordinate who hates him, who is disloyal to him, and who will do everything in his power to put the chief in a disadvantageous position, regardless of the damage that may be done to the department and to the quality of the service.'

". . . The Civil Service Commission while composed of laymen can employ experts and technicians to advise them and their day-to-day contact with the problems of the department gives them an opportunity for a far greater understanding of the requirements of discipline than any other agency. To charge such executives with the responsibility of policing the city while judges have the final say as to disciplinary measures creates a dilemma that would frustrate and confuse an honest administration of the civil service law, while a corrupt and indifferent administration might well take advantage of it to shift the responsibility to the judiciary.

". . . If the court is to substitute its judgment for the judgment of the Civil Service Commission and of the Commissioner of Police as to disciplinary action that should be taken, it would in effect be substituting judicial discipline without responsibility for executive discipline with responsibility. The ultimate effect of such action would be a breaking down of the discipline and morale of the Police Department. Courts must accept the honest judgment of the Chief of Police and the Civil Service Commission, those arms of the executive department charged with administration of the police, with respect to the proper

discipline to be enforced when charges have been proved."

The police board must act within the provisions of the Civil Service Act governing removal of officers. Plaintiff was discharged pursuant to section 12.1 of the act (Ill Rev Stats 1961, c 24½, § 51.1) which provides that "no officer . . . of the police department . . . shall be . . . discharged . . . except for cause . . . ." The statute is silent as to what constitutes cause. In the Nolting case the court adopted (159) the definition of cause as given in Murphy v. Houston, 250 Ill App 385 (1928):

> " 'While it is true that it is for the commission to decide what is cause for removal, it may not make an arbitrary and unreasonable rule in this respect. In Andrews v. King, 77 Me 224, a statute provided that an employee might not be removed except for cause. The court held cause to mean some substantial shortcoming which renders continuance in his office or employment in some way detrimental to the discipline and efficiency of the service and something which the law and a sound public opinion recognize as a good cause for his not longer occupying the place. This statement of the rule seems to be in harmony with the authorities. [Citing authorities.]' "

In Fantozzi v. Board of Fire and Police Comm'rs of Village of Villa Park, 27 Ill2d 357, 189 NE2d 275 (1963), the court held that the trial court was in error in affirming a decision of the board of fire and police commissioners which discharged plaintiff from the village police force on the findings that voluntary bankruptcy indicated a financially unstable individual whose retention would impair the reputation and efficiency of the police department, that plaintiff en-

129

tered upon debts beyond his ability to discharge, and that his continuance on the force would tend to bring the department into disrepute and would be harmful to the village. On review the court held (361) that the charges were not sufficient cause for removal or discharge in that they do not state some substantial shortcoming which renders the continuance of the officer in his office detrimental to the discipline or efficiency of the service. In Davis v. Board of Fire and Police Comm'rs of City of Peoria, 37 Ill App2d 158, 185 NE2d 281 (Abst 1962), the court held that it is for the city board of fire and police commissioners to decide what constitutes cause for the discharge of a police officer, so long as its decision is related to the requirements of the service and is not so trivial as to be unreasonable and arbitrary.

The uncontradicted evidence in the record here reveals that plaintiff had appeared in public wearing his wife's undergarments. On a prior occasion plaintiff had expressed a desire to wear his wife's clothing, but she had prohibited his doing so. Against this background, the fact that plaintiff had worn feminine clothing at a Halloween party is significant. Because of his interest in wearing feminine clothing, the board concluded that he should be removed from the force. A psychiatrist who examined plaintiff was of the opinion that his conduct was due to a relatively benign sexual psychopathy known as fetishism, a condition in which erotic impulses are aroused by articles of apparel belonging to the opposite sex. His action bordered on transvestitism, a form of perversion in which sexual gratification is obtained by wearing clothing of the opposite sex. This abberation was considered by the board to be a substantial shortcoming which would render plaintiff's continued employment as a policeman detrimental to the discipline and efficiency of the service. While plaintiff's neurosurgeon

130

gave it as his opinion that it was unlikely that a similar incident would occur, he prefaced his remarks by stating that he was not "endowed with a crystal ball as to what might happen in the future" and concluded by commenting that "obviously, anything is possible." But the board, unlike a medical expert, would have to assume the responsibility for plaintiff's future conduct if it did not terminate his service. With a wealth of experience on which to draw, it evidently felt that it could not afford the risk of continuing plaintiff in a service which unquestionably requires an emotionally well-balanced personnel. The board was clearly not acting in an unreasonable or arbitrary manner; its decision to discharge plaintiff for his conduct is definitely related to the requirements of the service. The issue here is only secondarily the personal tragedy which has befallen a police officer with a good record; the controlling issue is the maintenance of proper discipline and morale in the police force of the City of Chicago.

■ Plaintiff's good behavior, prior to the conduct complained of, is not an issue in this case. In a situation where a policeman was intoxicated on one occasion (Lindeen v. Illinois State Police Merit Board, 25 Ill2d 349, 185 NE2d 206 (1962), in the light of the plaintiff's record, supported by a number of character witnesses, the court held that such a violation of the rules did not call for discharge. His conduct was the result of an error in judgment, not the result of a defect in personality; it did not constitute a substantial shortcoming. Here plaintiff's conduct was of a fundamentally different nature from the policeman's behavior in the Lindeen case, and in the instant case plaintiff's conduct constituted a substantial shortcoming.

Plaintiff's suggestion that his erratic behavior was attributable to a head injury sustained about two

years before this incident is not supported by the record. His own expert witness, a neurosurgeon, said: "I can say if there is any connection, it is an indirect one. . . ." A psychologist who had co-operated with plaintiff in his police work gave it as his opinion that "the root of this particular problem was in the marriage relationship."

The 1961 amendment to the statute governing the Chicago Police Department, allowing the board to suspend as well as to discharge a policeman, does not change the decision in this case.

The police board is charged with the duty of determining what constitutes cause for removal. In reviewing the decision of such a board under the Administrative Review Act it is the function of a court to decide if the charges preferred by the board are not so trivial as to be unreasonable or arbitrary, if it acted on evidence that fairly tended to sustain the charges, and if its decision is related to the requirements of the service; a court is not at liberty to substitute its judgment for that of the board. After a fair and full hearing, at which plaintiff was represented by counsel, the board concluded that plaintiff's continuance in police employment would be detrimental to the discipline and efficiency of the service; his bizarre behavior was something which the law and a sound public opinion recognize as a good cause for his no longer occupying a position as a policeman.

The judgment order and the order denying the board's subsequent motion to vacate the judgment order are reversed, and the cause is remanded with directions to restore the order of discharge by the police board.

Judgment order and subsequent order reversed and cause remanded with directions.

BURKE, P. J. and BRYANT, J., concur.