Virgil Cutright, Plaintiff-Appellant, v. Civil Service Commission of Springfield, and Frank England, Chairman, and J. H. Weiner and Harold C. Hawkins, Members of the Civil Service Commission, and Dwight H. O'Keefe, Commissioner of the Department of Health and Safety of Springfield, Illinois, and Dominick Rusciolelli, Member of the Civil Service Commission of Springfield, Illinois, Defendants-Appellees.

Gen. No. 10,823.

Fourth District.

December 21, 1967.

Horsley, Vespa and Lott, of Springfield, for appellant.

W. J. Simhauser, of Springfield, for appellees.

TRAPP, J.

Plaintiff appeals from the judgment of the Circuit Court entered upon administrative review of the decision of the Civil Service Commission of the City of Springfield, discharging plaintiff as a city health inspector. Under the record it is undisputed that plaintiff had been employed in this position for a period of ten years with no blemish on his record prior to the time the charges considered here were filed.

The evidence shows that plaintiff was a resident of the City of Springfield, Illinois, during the relevant years 1958 through 1965; that in 1958 he was assessed upon his automobile in Capital Township (Springfield); that in 1959, 1960, 1961, 1962, 1963, 1964 and 1965, plaintiff was not assessed upon his automobile in Capital Township but was assessed upon several rooms of furniture in Capital Township; that in 1959 and the years subsequent until September, 1965, plaintiff showed his residence as Greenview, Menard County, on his automobile registration with the Secretary of State; that in 1965 he received an assessment for the automobile from the Menard County Assessor and plaintiff signed and returned the assessment the next day after receipt; and that in September, 1965, plaintiff gave his residence as Springfield, Illinois, on his automobile registration.

The Civil Service Commission determined that plaintiff's conduct constituted a plan for evading the payment of personal property taxes upon his automobile, which the Commission deemed a failure to pay "a just debt and obligation," and that such acts were prejudicial to the city service. The Commission found violation of specified Rules (which are set forth only in the briefs), as follows:

> "11.03— . . . that the employee has committed an act or acts to the prejudice of the City service, . . ."
>
> "11.09 (i)—That the employee has failed to pay or make reasonable provision for the payment of his just debts."
>
> "11.09 (j)—That the employee has committed a criminal offense or a misdemeanor involving moral turpitude; or has been intoxicated in public."

The Circuit Court held that there was not sufficient evidence to sustain the findings of the Civil Service Commission as to the alleged violations of Rules 11.09 (i) and 11.09 (j), but did hold as to Rule 11.03:

> ". . . the Commission could have reached a decision based on the evidence presented before it that there was a fraudulent scheme by Plaintiff to avoid the payment of personal property taxes on his automobile and that such conduct was prejudicial to the city service."

There is no cross-appeal by the Commission.

The Menard County Assessor gives no reason why no assessment was attempted on the basis of duplicate automobile registration cards received from the Secretary of State in the years up to 1965, and does not know how he happened to get the information. However, Wilson Park, Supervisor of Assessments for Sangamon County, testified that he wrote the Menard County Assessor that it had come to his attention that Mr. Cutright had an

automobile but apparently it was not being assessed anywhere, and that he received a reply from the Menard County office that it would be assessed for 1965.

Plaintiff testified that his duties required him to drive through the side alleys to find complaints as to trash, garbage and weeds, and to report such to his office; that he received many calls at night and that he concluded that people were getting his phone number by inquiry as to his automobile license registration, and that he registered the automobile in 1959 as if he were from Greenview in Menard County to prevent people from tracing him through his automobile license, thus eliminating the bothersome telephone calls.

He testified that he told the Capital Township Assessors in 1959 that his car was registered in Menard County, and that when he took the assessment to the Menard County office in 1965 he had asked why he had not been assessed in the intervening years, and was then told it was probably caused by summer help who would discard the automobile registration duplicates transmitted by the Secretary of State if the clerk could not find a voter registration in Menard County.

Justifying his automobile registration in Menard County, plaintiff testified that his mother and brother lived in Greenview and that the sons supported the mother, who had no income. This included maintaining her home and the payment of taxes as well as procuring necessities, and that as a matter of expediency, the brother residing in Greenview accepted the responsibility of paying such bills and taxes, and that the other brothers remitted upon billing for their share of the several expenses. He stated that he also had personal belongings at his mother's home. There is no contradiction of facts testified to by the plaintiff.

No explanation is given by any witness of the manner in which Wilson Park received the information which he transmitted to the Menard County Assessor, but it would be possible for a Capital Township Assessor being told by

plaintiff that his car was registered in Menard County to report this fact to his supervisor. It is undisputed that plaintiff received no personal property tax assessment from Menard County until 1965, at which time he promptly signed it.

It is not charged that plaintiff undertook to avoid the payment of the personal property tax upon his automobile in Sangamon County specifically, but rather to avoid the tax in any county. It is recalled that in 1957 the Legislature provided that the Secretary of State should advise local tax assessors of vehicle registrations in the several counties. Chapter 95½, § 3–806 (Ill Rev Stats). Such information was used, albeit, imperfectly in Menard County. The record shows no reason suggesting that plaintiff concluded that it would not be followed in his case. Again, absent advice to the assessor of Capital Township, as testified to by plaintiff, there would be a considerable possibility that plaintiff would have the latter schedule his automobile as on the previous listing so that he would be assessed for the automobile, both in Menard and Sangamon County.

The charges as filed before the Commission do not appear in the record, but are only stated in the finding of the Commission. It cannot be ascertained with adequate certainty whether the act to the prejudice to the city service results from the alleged violations of Rules 11.09(i) and 11.09(j), or is a separate and distinct grounds for discharge.

The conclusion of the trial court presents a troublesome anomaly, for while it finds that the violations of the specific Rules are not supported by the evidence, nonetheless, the Commission could have reached a conclusion that there was a fraudulent scheme and that such was prejudicial to the city service.

■■  The rule, as found, is that administrative decisions must be supported by substantial evidence. Gibbs

■■■■■■■■■■■■■■■■■■■■■■

v. Orlandi, 27 Ill2d 368, 189 NE2d 233; Burke v. Civil
Service Commission, 41 Ill App2d 446, 190 NE2d 841.

■■ The objective of Civil Service systems is to as-
sure that an employee is not to be discharged for frivolous
and trivial reasons, but on the other hand, he has no right
to the job if he is incompetent. Hacker v. Myers, 33 Ill
App2d 322, 179 NE2d 404; Burke v. Civil Service Commis-
sion, 41 Ill App2d 446, 190 NE2d 841. To that end the
statute provides that discharge shall be for "cause."
While there is no legislative definition, our courts define
"cause":

"... to mean some substantial shortcoming which
renders continuance in his office or employment in
some way detrimental to the discipline and efficiency
of the service and something which the law and a
sound public opinion recognize as a good cause for
his not longer occupying the place."

Murphy v. Houston, 250 Ill App 385; Etscheid v. Police
Board of Chicago, 47 Ill App2d 124, 197 NE2d 484; Fan-
tozzi v. Fire and Police Com'rs, 27 Ill2d 357, 189 NE2d
275; Nolting v. Civil Service Commission of Chicago, 7
Ill App2d 147, 129 NE2d 236.

■ It has been stated that the judgment of the
administrative body prevails if the decision relates to the
requirements of the service. This rule is directed to con-
duct which may properly be described as detrimental to
the discipline and efficiency of the service to be per-
formed. Etscheid v. Police Board of Chicago, 47 Ill App2d
124, 197 NE2d 484; Nolting v. Civil Service Commission
of Chicago, 7 Ill App2d 147, 129 NE2d 236; Fantozzi v.
Fire and Police Com'rs, 27 Ill2d 357, 189 NE2d 275; Davis
v. Board of Fire and Police Com'rs, 37 Ill App2d 158, 185
NE2d 281. Most of the reported cases relate to the per-
formance of the employee's duty. There is no evidence in
the record found upon complaints as to the performance

of plaintiff's duties, or any complaint as to a want of efficiency.

In Fantozzi v. Fire and Police Com'rs, 27 Ill2d 357, 189 NE2d 275, charges were brought against a police officer following his taking bankruptcy. The officer was discharged upon a finding of the Commissioners that bankruptcy showed the officer to be a financially unstable individual, and that bankruptcy would impair the reputation and efficiency of the police department and tend to bring the police department into disrepute. The Supreme Court noted the absence of complaints concerning the officer's performance of his duties, and determined that under the facts of that case, the employee was not a financially unstable individual who demonstrated substantial shortcomings in the performance of his duties. It pointed out that there was no evidence the officer was a dishonest debtor, and that there was no competent evidence that his bankruptcy would bring scandal to the service.

■ The conclusion of the trial court that the Commission:

> ". . . could have reached a decision based on the evidence presented before it that there was a fraudulent scheme by Plaintiff to avoid the payment of personal property taxes on his automobile and that such conduct was prejudicial to the city service."

does not follow the requirement of the Supreme Court that there must be substantial evidence of plaintiff's shortcomings in some way detrimental to the discipline and efficiency of the service. The dismissal of plaintiff on the basis of Rule 11.03 requires some evidence or showing of the manner in which the offending conduct was prejudicial to the city service.

The cause is reversed and remanded to the Circuit Court with directions to reverse the decision of the Civil Service

Commission, and remand the cause to such Commission for rehearing and consideration based upon evidence of the issue of prejudice to the city service cause of plaintiff's conduct.

Reversed and remanded.

SMITH, P. J. and CRAVEN, J., concur.