Leonard W. Guzell, Plaintiff-Appellant, *v.* The Civil Service Commission *et al.*, Defendants-Appellees.

(No. 56197;

First District (3rd Division)—January 17, 1974.

Richard F. McPartlin, of Chicago, for appellant.

William J. Scott, Attorney General, of Chicago (John D. Whitenack and Warren K. Smoot, Assistant Attorneys General, of counsel), for appellees.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

The plaintiff, Leonard Guzell, was employed for eight and one-half years in the Illinois Department of Revenue. On April 24, 1970, he was suspended from his position as Revenue Auditor II and formal charges were filed against him which alleged that he had a conflict of interest. A hearing was held before an officer of the Civil Service Commission and his discharge was recommended. The Civil Service Commission adopted the recommendation of the hearing officer. Guzell filed a complaint for administrative review in the Circuit Court of Cook County and the court sustained the decision of the commission.

On appeal, Guzell makes the following contentions: he was not guilty of the conflict of interest set forth in the charges; he was deprived of due process when the hearing officer and the commission improperly relied on matters not contained in the formal charges, and the order removing him from his civil service position was arbitrary, unreasonable and capricious.

The Illinois State income tax went into effect August 1, 1969, and the responsibility for its enforcement was placed in the Department of Revenue. In July 1969, the director of the department sent the following bulletin to the department's supervisors:

"TO: All Supervisory Personnel, Department of Revenue
SUBJ.: (1) Conflict of Interest
(2) Gratuities

(1) As you know, the Illinois General Assembly enacted an Income Tax effective August 1st. Every person and company subject to this Act thereby becomes a taxpayer.

Any employee of the Department of Revenue who engages in, or has any financial interest in, any outside bookkeeping or accounting practice or service on or after August 1st will be in an obvious conflict of interest situation.

Accordingly, any employee who has such outside bookkeeping or accounting interests must terminate any such interests on or before July 31, 1969.

This prohibition also applies to any compensated legal services

by any full-time employee in connection with helping any taxpayer in the preparation of a tax return. A special rule for part-time hearing officers will be issued shortly.

(2) No employee may accept directly or indirectly any compensation, gift, or favor in addition to his/her salary, for preparing or helping in the preparation of a tax return on and after August 1, 1969.

Every employee of the Department of Revenue will be required to fill out a new 'Conflict of Interest Statement' effective August 1, 1969. All supervisory employees and administrative agency heads will be responsible for seeing that every employee under his supervision reads the foregoing and fills out and signs a 'Conflict of Interest Statement' when these are distributed.

Please have each employee in your Division sign his/her name to the return copy of this memo and return it to A. D. Hosler, Executive Assistant.

GEORGE E. MAHIN (Signed)

George E. Mahin, Director.

Note: a. Under (1), conflict of interest should not be construed as limited to the areas mentioned within this section.

　　　b. Under (2), gratuities or extra compensation should not be construed as limited to the services mentioned within this section."

Guzell signed a copy of this directive and returned it to his supervisor. He also signed two statements in 1969 in which he disclaimed having economic interests or relationships which were likely to involve him in a conflict of interest.

In addition to his position in the Department of Revenue, Guzell conducted a part-time real estate business and an accounting and tax service in a ground floor office on the northwest side of Chicago. In April 1970 Sandra Paffenroth called upon him at his office and he assisted her in the preparation of her State income tax return. This was the basis of the accusation that he was guilty of conflict of interest. The formal charge stated:

"CHARGES FOR DISCHARGE: Conflict of Interest

On April 6, 1970, at approximately 7:40 P.M. he examined the State Income Tax and the Federal Income Tax form of taxpayer Sandra Paffenroth for the purpose of making corrections. He made two notations on the State Income Tax form. He further charged a $3.00 fee of the said Sandra Paffenroth."

At the hearing the documents signed by Guzell were introduced into

evidence. The first witness was Sandra Paffenroth, a research assistant for an economic consultant, who testified that her friend, Daniel Reid, an investigator for the Department of Revenue, asked her to have her tax returns checked by Guzell and arranged for an evening meeting. Accompanied by Reid, she met Guzell for the first time on April 6, 1970, at his real estate office. He was working on an elderly woman's income tax and he told the witness to wait. When it was her turn, Paffenroth gave him her 1969 State and Federal forms. The State form had been previously completed by her except for the two lines pertaining to taxes withheld and the balance due. Paffenroth testified that Guzell checked the figures and used an adding machine to compute various ways of saving money. He filled in the two lines, told her the form was made out correctly, requested and received a $3.00 fee, checked the Federal return, and stamped and made out a return envelope. She said that Guzell stated it was not necessary for him to sign the completed form in the space provided for a preparer other than the taxpayer. A copy of the Illinois income tax return and the check endorsed by Guzell were introduced into evidence.

Daniel Reid related that his immediate superior in the Department of Revenue asked him to investigate Guzell to determine if there was a possible conflict of interest between his position and his business. Reid observed that the realty office windows contained Guzell's name and a sign stating "Accounting." A card inside the window advertised, "Income Tax Service—Call or drop in." Reid said 15 minutes were spent on the forms and his description of the transaction was similar in most respects to that of Paffenroth. He testified that Guzell asked Paffenroth how she was referred to him and the girl responded, "through a friend."

Guzell testified that he conducted a part-time real estate business at the office, and that he owned the business and had two men working for him. He admitted having an advertisement in the window for income tax work, but said the service pertained to Federal tax forms which he frequently made out. According to his recollection, a woman telephoned and arranged the meeting for Paffenroth. He could not recall but he might have inserted the figures on the form for her. Besides filling out his own and Paffenroth's State forms, he did some others without charge for students and servicemen.

He distinguished the kind of work he did for the State from his own business. His job as a revenue auditor entailed auditing liquor and cigarette returns. The only times his job involved the State income tax was when he distributed forms for nine or ten days after the tax law had been passed in June 1969, when he answered phone inquiries from the

public for a major portion of January 1970, and when he answered questions and handed out tax forms in a building lobby in March 1970. He was never given a State income tax return to audit.

Guzell acknowledged that he signed the conflict of interest memorandum and the declarations issued by the director. However, he said he did not understand the memorandum and did not realize that he might have a conflict of interest. He rationalized the possible conflict by saying: everybody had done outside tax work in the past; the work he performed was after hours; his business was not that great, and even though his supervisors knew of his business they never discussed it with him before his discharge.

John Smith, the assistant manager of the Taxpayer Audit Division of the Revenue Department, was called as a rebuttal witness. He said that the duties of a Revenue Auditor II, the position Guzzell held, encompassed the auditing of Retailers Occupational Tax, Use Tax, Motor Vehicle Tax, Motor Fuel Tax, and all related tax returns, and with the introduction of the Station income tax, the auditing of those returns. He admitted, however, that he had never assigned Guzell to audit income tax returns or that he ever told him he would receive such an assignment.

The hearing officer found that the evidence was clear and convincing that Guzell assisted a taxpayer for monetary gain while he was an employee of the Department of Revenue; that documents signed by him were controlling in the resolution of the issue presented by the charge; that he willfully concealed an obvious conflict of interest for the purpose of continuing his position, and that his culpability in permitting his private interest to conflict with his entrusted interest as an employee rendered him unsuitable for continued retention in State employment.

The Civil Service Commission adopted the hearing officer's finding and conclusions insofar as they pertained to the conflict of interest issue. It found that Guzell had rendered income tax services despite his having been instructed not to do so. Taking judicial notice of the necessity of maintaining the public's respect and trust of the State income tax program, the commissioners noted that the plaintiff was expressly enjoined from conduct which even had the appearance of impropriety. Although the amount he received as payment from Miss Paffenroth was small, strict compliance with the department's regulations was necessary. The commission's decision concluded with the following sentence:

> "Accordingly, since activity of the nature engaged in by the Respondent could well cause the State Income Tax program to be tarnished with disrepute, the Commission affirms and adopts the recommendation of the Hearings Officer that the respondent be forthwith discharged."

In contending that he was not guilty of the conflict of interest charge made against him, Guzell emphasizes that he was not charged with lying or deceiving the department by his signed statements that he had no economic interests which were likely to involve him in a conflict of interest and that he was not charged with having violated the department's memorandum of July 1969. He argues that since his specific duties within the department did not include auditing or reviewing income tax returns there was no conflict of interest. He places reliance upon the decision in *Senese v. Civil Service Com.* (1967), 88 Ill.App.2d 172, 232 N.E.2d 256. In that case, the court affirmed an employee's dismissal on the basis that he had a conflict of interest because he purchased flowers on behalf of the City of Chicago and sold the same flowers to the City at a profit for himself. Guzell notes the difference between the transactions in *Senese* and his case and points out that he did not audit or process Paffenroth's return after it was filed with the Department of Revenue.

■■ Although Guzell did not, as a department employee, audit Paffenroth's return, he was guilty of a conflict of interest. As an employee of the Department of Revenue, he had been informed that continuing an outside accounting practice after August 1, 1969, would constitute such a conflict. He had been instructed not to accept compensation for preparing or helping taxpayers to prepare their returns. Despite these warnings, Guzell allowed his personal business to encompass income tax problems; he assisted a taxpayer in the preparation of her return and accepted remuneration for his services. He acted inconsistently and in a dual capacity. On the one hand, he was employed by the State to further the interests of its revenue programs and had been assigned to phases of the income tax program; on the other hand, he represented a taxpayer and furthered her interests which did not conincide with those of the State. The evidence supported the charge and the decision of the Civil Service Commission was not contrary to the law nor against the manifest weight of the evidence.

■■ Guzell asserts that he was denied due process because the hearing officer and the commission based their decisions on the supposition that he violated the memorandum of July 15, 1969, and untruthfully answered the declarations of his economic interests, and that both of these findings went beyond the scope of the charges. He further asserts there was no proof to sustain the commission's speculative conclusive that his conduct would cause the income tax program to be tarnished with disrepute. Guzell was charged with examining Sandra Paffenroth's State income tax form and making two notations on it for which he received $3.00. This allegation brought him into direct conflict with paragraph (2) of the July memorandum. The introduction into evidence of the memorandum

and the declarations were proper and they were received without objection. They were relevant to the conflict of interest charge because they showed his prior knowledge of prohibited conduct. The references to them by the hearing officer and the commission were germane to the issue on trial and did not indicate that they had been substituted for the formal charge.

■■ Guzell's suggestion that the written charges did not provide him with a sufficient notice to defend the latter adduced proof, is untenable. Charges filed before an administrative agency do not have to be drawn with the same refinements as the pleadings in a court of record. (*Schyman v. Department of Registration & Education* (1956), 9 Ill.App.2d 504, 133 N.E.2d 551.) The written charges need simply apprise the alleged wrongdoer with reasonable certainty of the accusation which must be met at trial. (*Monroe v. Civil Service Com.* (1965), 55 Ill.App. 2d 354, 204 N.E.2d 486.) If Guzell had any doubt and desired a more extensive detailing of the charge, a bill of particulars should have been requested. (*Greco v. State Police Merit Board* (1969), 105 Ill.App.2d 186, 245 N.E.2d 99.) The charge, besides relating the facts of the alleged violation, was captioned "Conflict of Interest." The inclusion of more words in the formal charges explaining that the memorandum was pertinent to the conflict of interest, was unnecessary.

Citing the case of *Fantozzi v. Board of Fire & Police Comm'rs* (1962), 35 Ill.App.2d 248, 182 N.E.2d 577, Guzell contends that the commission's concluding sentence that his activity could cause the tax program to be tarnished with disrepute was speculation unsupported by proof. It was charged in *Fantozzi* that a police officer's inability to pay debts caused scandal to the department and affected his fitness to perform his duties. It was held on review that the charges were not sufficient cause for removal and the findings were unsupported by the evidence. Similarly, in *Cutright v. Civil Service Com.* (1967), 90 Ill.App.2d 289, 232 N.E.2d 312, a city health inspector's discharge for acts prejudicial to city service was reversed because there was no evidence that the employee's non-payment of personal property taxes on his automobile had a prejudicial effect on service as a city employee. Unlike the *Fantozzi* and *Cutright* cases, Guzell was not charged with conduct detrimental to the department which employed him. He was charged with a conflict of interest. In order to uphold the charge it was only necessary to prove that he was guilty of a conflict of interest, not that he had caused the income tax program to be tarnished. The "tarnished with disrepute" phrase was a comment of the commission characterizing the activity for which he had already been found guilty. This was an observation about the

seriousness of his conduct which, in the opinion of the commission, warranted his discharge. "Cause" for discharge has been defined as:

> "\* \* \* some substantial shortcoming which renders continuance in his office or employment in some way detrimental to the discipline and efficiency of the service and something which the law and a sound public opinion recognize as a good cause for his not longer occupying the place."

(*Fantozzi v. Board of Fire & Police Comm'rs* (1963), 27 Ill.2d 357, 189 N.E.2d 275; *Etscheid v. Police Board of City of Chicago* (1964), 47 Ill. App.2d 124, 197 N.E.2d 484.) Conformity to the rules of the employing department is properly described as conduct which relates to the discipline and efficiency of the service. As long as Guzell's conduct related to the requirements of service and was not so trivial as to be unreasonable and arbitrary, the decision of the administrative body must prevail.

■■■ Guzell's final contention is that the discharge order was arbitrary, unreasonable and capricious. His general reasons for this contention are: his prior record of service was unblemished; a surreptitious investigation was undertaken; the department memorandum was rife with ambiguities; an unreasonable time was given for him to dispose of his business and that it was not fair to terminate his employment for accepting $3.00 without prior discussion of the matter with him by a superior. There is no merit to his contention. It was not unfair to conduct the investigation without prior notice to him. The memorandum was not ambiguous. He was given two weeks time to divest himself of conflicting interests but he still had not done so more than eight months after the order went into effect. It was not necessary for his superior to discuss the grievances with him before preferring charges. The sizes of his fee is irrelevant to the gravity of his conduct. This court cannot substitute a different decision for that of the commission because the findings of that body were not so unrelated to the requirements of the service nor so trivial as to be unreasonable or arbitrary. (*Davenport v. Board of Fire & Police Comm'rs* (1972), 2 Ill.App.3d 864, 278 N.E.2d 212.) The evidence supports the decision and it is affirmed.

Affirmed.

McNAMARA, P. J., and McGLOON, J., concur.