WARREN HOLLIDAY, Plaintiff-Appellant, *v.* THE CIVIL SERVICE COMMISSION, Defendant-Appellee (State *ex rel.* J. Thomas Johnson, Director of the Illinois Department of Revenue, Defendant).

Fourth District   No. 4—83—0483

Opinion filed February 6, 1984.—Rehearing denied March 9, 1984.

Wayne R. Golomb, of Springfield, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Rosalyn B. Kaplan, Assistant Attorney General, of counsel), for appellee.

PRESIDING JUSTICE MILLS delivered the opinion of the court:
State employee discharged.
Civil Service Commission affirmed.

Circuit court affirmed.

We affirm.

Holliday appeals the trial court's affirmance of a decision of the Civil Service Commission affirming his discharge from duties as a revenue collection officer for the Department of Revenue Auditing Collection Bureau of the State of Illinois.

Put simply, Holliday was discharged from his job as a revenue collection officer for failing to disqualify himself from an assignment. A supervisor's order called for him to collect delinquent taxes from Louise Shop, Incorporated (LSI), a corporation which was owned and operated by his wife. Despite the fact that Holliday's supervisors were apparently aware that Mrs. Holliday operated the shop, we hold that anyone in Holliday's position should know better than to engage in a practice which would be so likely to raise a suspicious eyebrow on the face of the rest of the taxpayers of the State. While we do not condone the sloppy office practices engaged in by the Department of Revenue in this instance, Holliday should have disqualified himself upon being assigned the account. He did not. He was dismissed and the dismissal was upheld by the trial court upon administrative review. Upon a complete review of the record, we affirm the decision.

Realizing that the above skeletal outline of the facts does not fully set forth all the nuances of the evidence in the voluminous record which we have reviewed, further facts which are pertinent to a full understanding of the issues are incorporated as needed during the following discussions.

## I

Holliday has forcefully argued several points on appeal. Two points, however, were not so forcefully argued, and we turn to those initially.

■■ Holliday first argues that since the evidence showed that several persons within the Department of Revenue knew he was actively involved in a taxpayer account which involved his wife, it was unfair for his superiors to seek his dismissal based upon this behavior. The gist of his argument is that since it was reasonable for him to believe that his supervisors condoned his behavior, a dismissal based on those actions was somehow violative of principles of due process. Holliday offers no citations or reasoned argument to support what is apparently an argument based loosely on the principles of estoppel. Supreme Court Rule 341(e) (87 Ill. 2d R. 341(e)) specifically sets forth the admonition that parties submitting briefs to Illinois courts of appeal must support their arguments with citations to relevant authority

or risk having the points waived. While considering this rule, one court has stated "[a] reviewing court is entitled to have the issues clearly defined with pertinent authority cited and is not simply a depository into which the appealing party may dump the burden of argument and research." (*Pecora v. Szabo* (1982), 109 Ill. App. 3d 824, 825-26, 441 N.E.2d 360, 361.) Our supreme court similarly has refused to consider points not supported by authority. See, *e.g.*, *Village of Roxana v. Costanzo* (1968), 41 Ill. 2d 423, 243 N.E.2d 242.

We do likewise here.

■ Doomed to a similar fate is Holliday's contention that a civil exclusionary rule should be applied in his case to "quash" tax returns of LSI which were introduced as proof of Holliday's involvement in the preparation and collection of LSI tax returns. Since no authority is cited, we decline to consider this argument.

II

Turning to arguments which Holliday has properly argued, we find that none is sufficient either singularly or in the aggregate to reverse the decision of the Civil Service Commission.

■ The first issue is whether the Department of Revenue failed to commence a hearing within 30 days as required by statute. It did not.

A chronological outline is appropriate at this point:

| | |
|---|---|
| February 23, 1982 | Plaintiff served with papers suspending him for 30 days. |
| March 17, 1982 | Discharge proceedings initiated. |
| March 18, 1982 | Written request for hearing. |
| March 31, 1982 | Plaintiff's motion for discovery. |
| April 16, 1982 | First hearing held. |

At the hearing on April 16, Holliday complained that discovery, which included 30 requests for depositions, had not been complied with. The hearing officer ordered the State to comply. The State offered to take a continuance to which Holliday objected. At this point, the hearing officer decided to allow the State to put on testimony pertaining to handwriting on various Retail Occupation Tax (ROT) returns of LSI. Holliday's position here is that the testimony was taken as a subterfuge in order to avoid the operation of a rule which required that hearings be had within 30 days following a request for such. The State replies that the Commission complied with the statutory requirements and further that the compliance was reasonable since the discovery request was so broad that the hearing officer acted only to avoid impeding the timely commencement of the hear-

ing. The State additionally contends that the hearing officer's action in allowing cross-examination of the State's witness to be deferred pending discovery protected his rights and resulted in no prejudice. Both parties cite numerous cases in support of these positions.

In *Sherman v. Board of Fire & Police Commissioners* (1982), 111 Ill. App. 3d 1001, 445 N.E.2d 1, the board set a hearing within 30 days of the filing of the complaint against two police officers. In its opinion the appellate court noted that after a cause is set for hearing, the board may continue the hearing on its own motion to allow complainants to amend the charges and that such action is in compliance with the board's rules and regulations. Only by failing to *schedule* a hearing within 30 days does the board lose jurisdiction. In the instant case, it is clear that the board set the time for the hearing within 30 days after the request and as such the board did not lose jurisdiction for failing to sit.

Holliday also cites *Ragano v. Illinois Civil Service Com.* (1980), 80 Ill. App. 3d 523, 400 N.E.2d 97, as a case detailing the circumstances under which an administrative hearing must be commenced within 30 days. *Ragano* has no application to this case whatever. The question there was the reasonableness of a 140-day delay between the date on which information which would have allowed the board to hold hearings became available and the actual date of the hearings. There had been a brief hearing within the 30-day period at which the only evidence offered was an indictment against the civil servant. The *Ragano* court assumed *arguendo* that the hearing which was scheduled within 30 days of the request was sufficient to satisfy the 30-day rule. The court found unreasonable the 140-day delay between the time that information was available which would have allowed the Commission to go ahead with the hearing and the date on which the actual hearing was held. In this case, there is no question about undue delay between hearings as they were held basically in one-week periods following the original hearing on April 16.

The final case offered by Holliday is *Riggins v. Board of Fire & Police Commissioners* (1982), 107 Ill. App. 3d 126, 437 N.E.2d 327. In *Riggins,* the court held that a hearing where no witnesses were called, no evidence was taken, and no arguments were made could not be a hearing for purposes of the rule requiring a hearing within 30 days. The court found that while there may have been a technical violation of the rule, it was obvious that the hearing was not had due to defendant's voluminous request for discovery. Under those circumstances, the court held there was no violation of the statute which would result in the Commission losing jurisdiction over the case. Simi-

larly, in this case it is apparent that even if there was a technical violation of the 30-day rule—which there was not—the delay was occasioned by Holliday's voluminous request for discovery, and as such the Commission did not lose jurisdiction over the case.

We note that a reviewing court may look at all the circumstances surrounding a given hearing and determine whether it was a sham or not. (See *Hardaway v. Civil Service Com.* (1977), 52 Ill. App. 3d 494, 367 N.E.2d 778.) Looking at the record in this case as a whole, it seems clear that the hearing held on April 16 was not a sham in order to avoid the operation of the 30-day rule. Rather, the hearing was held in good faith, evidence was taken, and cross-examination was deferred in an effort to not prejudice Holliday. Under these circumstances, the 30-day statute was not violated and the Commission had jurisdiction to hear the case. No error.

### III

■ The next issue raised is whether Holliday's discharge violated Department of Personnel rules. Holliday argues that since his suspension on February 23 pending his discharge was for a period of not more than 30 days in a 12-month period, Rule 2—640 of the Department of Personnel and its protections apply to his case. The State responds that by virtue of the fact that Holliday was sought to be discharged, only Rule 2—710 applies. The State argues in the alternative that even if this court were to find that predischarge improprieties were present, such improprieties do not affect the validity of a later discharge.

Upon analysis it seems clear that only Rule 2—710 applies to this situation. Rule 2—640 provides for procedures to be followed when an employee is to be suspended for disciplinary reasons for a period of 30 days or less. Rule 2—640 contains no references to discharge whatsoever. On the other hand, Rule 2—710 specifically states that "an operating agency may suspend any employee for up to 30 days pending the decision of the operating agency whether charges for discharge shall be filed against such employees." The paragraph then sets out various procedures, all of which were followed in this case. Since the agency here was requesting discharge of the employee, Rule 2—640 has no application by virtue of the plain language of Rule 2—710 itself.

The alternative argument of the State is also well taken. In *Bart v. Department of Law Enforcement* (1977), 52 Ill. App. 3d 487, 491, 367 N.E.2d 773, 776, this court stated, "[A]ssuming *arguendo* that the suspension pending discharge proceedings was improper, it does

not affect the validity of the later discharge. [The] remedy for any allegedly improper suspension is not before [the court]." Similarly, Holliday cannot be heard to complain that possible improprieties during his suspension somehow affect his eventual discharge. No error.

## IV

■ Another issue raised by Holliday combines questions concerning whether the Commission erred in considering evidence not called for by a bill of particulars filed by the State and whether the hearing officer failed to conform his decision to the charges set forth in the bill.

Following the first hearing on April 16, 1982, Holliday filed a motion for a bill of particulars. The Department filed the bill on May 13, 1982, setting forth five paragraphs which constituted the charges against Holliday. The first charge was that Holliday, while a corporate secretary of LSI, had failed to request permission for outside employment. Paragraph 2 charged Holliday with violating a rule of the Department proscribing the regular collection of current tax returns. The paragraph also charged Holliday with engaging in inappropriate behavior by filling out ROT returns for LSI which meant that he was checking his own work upon collection of the forms. Paragraph 3 charged Holliday with failing to disqualify himself from collecting LSI returns when he was the secretary of the corporation and his wife was the president. This violated rules set out on page 28 of the employee handbook. Paragraph 4 charged Holliday with responsibility for a late payment of taxes since he was an officer of LSI. Paragraph 5 states that the charge of failing to follow instructions to stop collecting LSI returns was an exacerbating factor applied to paragraph 2 above but was not an independent charge.

Following extensive testimony, the hearing officer made several findings which are reflected in a statement included in this record. He found that the most serious charge was No. 3 in that Holliday failed to disqualify himself from an assignment to make collections from LSI, when he was aware of his nexus with that organization. He noted that all of the other charges flowed from the accusation that respondent placed himself in a conflict-of-interest situation when he collected State taxes from LSI during the time it was owned by his wife. He noted that paragraph 8 of the employee handbook requires an employee who has been given an assignment by the Department which involves a person, group, or other entity with which the employee has a personal, financial, or beneficial relationship to disqualify himself from the assignment. The hearing officer found that, notwithstanding

Holliday's denial, the evidence demonstrated that he maintained a personal, financial, and beneficial interest in LSI. This was pointed out by the fact that he had invested money in the shop and that it logically would have been a matter of concern whether his wife's business succeeded or not, because the success of the business would directly or indirectly accrue to him as her husband and creditor. The hearing officer found that the contention that Holliday's supervisors knew that he was collecting taxes from his wife's business was based on uncertain evidence. He noted that there could have been a "diffused awareness" by some of his superiors concerning his contacts with LSI. But the hearing officer found that even had his supervisors been fully aware of the facts, that would not serve to exonerate Holliday from his responsibility as a revenue collection officer. The laxity of his supervisors could not excuse Holliday's behavior.

The hearing officer went on to find that a second charge had been proved in that respondent completed ROT returns for LSI. The hearing officer acquitted Holliday of charges of failing to file a request for outside employment which would allow him to serve as secretary of LSI. The hearing officer made no finding on the failure of LSI to file timely ROT returns. The officer found that Holliday had violated department policy by failing to follow instructions given to him both orally and in writing not to pick up ROT returns from LSI. He concluded that while this may have been a technical violation of the rule, its importance in the matter of Holliday's discharge was questionable. Surveying the charges in their entirety, the hearing officer found that the charge of engaging in a conflict of interest had been proved. Since the conflict went directly to matters of public confidence in a State taxing institution, the discharge of Holliday was appropriately undertaken.

On December 16, 1982, the Civil Service Commission affirmed the finding of the hearing officer. On December 22, 1982, Holliday filed a complaint for administrative review. On July 7, 1983, the trial court found that the decision of the Civil Service Commission was supported by the evidence, that it was not arbitrary or capricious, and that no reversible error occurred. For purposes of this issue on appeal, Holliday's premise is that the charges in the bill of particulars revolve exclusively around his position as corporate secretary of LSI. The proof at trial tended to show that Holliday was never elected as the secretary of LSI but rather had his name inserted by an employee of the Secretary of State. This had been done when Holliday attempted to file an annual report with the Secretary of State in an effort to revive the corporation which had been technically dissolved for

failure to file a report in 1978. At this time Holliday was told by an employee of the Secretary of State that two distinct signatures had to be on the report in order for it to be filed. At one point the Secretary of State's employee had apparently crossed off Holliday's wife's name as secretary and inserted Holliday's. Holliday's position is that the State was bound to prove his position as a corporate officer in order to establish a conflict of interest since the bill of particulars set this fact forth as a portion of the charges. His argument is that since the proof was that he was never elected as a corporate officer, the State failed to prove a necessary element to require his discharge. We disagree.

Holliday supports his position with the case of *Bloom v. Nathan Vehon Co.* (1930), 341 Ill. 200, 173 N.E.270, but we find his reliance misplaced. *Bloom* was a cause of action for back salary, not administrative proceedings, and as such is factually distinguishable although one aspect of the opinion bears upon the case before us. The court in *Bloom* found that "when a bill of particulars has been required and furnished, its effect is to limit and restrict the plaintiff, on the trial, to proof of the particular cause or causes of action therein mentioned." (341 Ill. 200, 206, 173 N.E. 270, 273.) It seems the golden kernel which may be winnowed from *Bloom* is that a bill of particulars binds a party to the theory upon which a cause of action rests. Here, the theory upon which Holliday was charged and discharged was a conflict of interest. This is exactly the issue upon which all the hearings were held and to which all the proof was directed. Charges 2 and 3 in the bill of particulars indicate that Holliday completed ROTs for LSI and failed to disqualify himself from collecting LSI accounts. These are defined by the guidelines in the employee's handbook as juxtapositions which would likely spawn a conflict of interest. Under these circumstances it seems that all the evidence taken at trial—as well as the evidence cited by the hearing officer in his decision—were well within the *theory* set out by the bill of particulars.

Similarly, Holliday argues that since no mention of loans he made to his wife for her use in the business was found in the bill of particulars, the loans were improperly considered by the hearing officer and could not support the charges. Again, even if the bill of particulars was binding as to theory, the fact that a person made a loan to his wife (or future wife) to be used in the interest of a business from which he was to collect taxes supports the charge of a conflict of interest.

■ Finally, along these same lines, Holliday argues that the charges must be specific and that here the charges were insufficient.

He notes that the charges were not even as specific as those leveled in *Burns v. Police Board* (1982), 104 Ill. App. 3d 612, 432 N.E.2d 1300. In *Burns*, the allegations were that police officers stopped and searched and solicited a bribe from *aliens* using their official position to obtain a sum of money from *aliens*. The charges leveled here against Holliday were much more specific and in our opinion were entirely sufficient to apprise him of the charges stemming therefrom.

To our view, the Commission did not err in considering evidence which was not specifically included in the bill of particulars since the theory set forth in the bill, and the theory upon which Holliday was tried, were exactly the same. Further, the allegations were sufficiently set forth by both the charges and the bill. No error.

## V

■ The penultimate issue raised by Holliday is whether the fact that Holliday was shown to have no business interest in LSI refutes as a matter of law the claim that there was a conflict of interest. Offering the behavior found in the case of *Guzell v. Civil Service Com.* (1974), 17 Ill. App. 3d 266, 308 N.E.2d 351, as the type of behavior which may result in discharge, Holliday urges that since he had no technical business interest in LSI, the Civil Service Commission incorrectly found that cause was established for which he might be discharged. Holliday's interpretation of *Guzell* is that there must be some type of remuneration to establish a conflict of interest. In this case, Holliday claims that all he did was give money to the corporation, not receive it. In this sense, Holliday claims that he had no business, personal, or financial interest in LSI and therefore could not in any way have violated department guidelines. The State responds that *Guzell* shows that the definition of conflicts of interest may be created by agency guidelines and that violations of guidelines are factual determinations made by comparing the employee's behavior against the agency's definition of conflicts of interest. They go on to argue that since Holliday raised no issue concerning the manifest weight of the evidence, the arguments that the findings were contrary thereto are waived and that the dismissal must stand.

The *Guzell* case clearly shows that the Civil Service Commission recognizes that employees in sensitive tax-associated employment are bound to avoid even the appearance of impropriety and that even though the sum allegedly received by the plaintiff in that case was very small, the plaintiff was bound to strict compliance with department regulations. The Commission's decision was upheld on appeal and the opinion was phrased in terms of the potential of the ques-

tioned behavior to tarnish the program. The court went on to note specifically that the size of the fee was irrelevant to the gravity of the employee's misconduct. Further, the court noted that it could not overrule a decision of the Commission unless the findings of the body were so unrelated to the requirements of service, or so trivial as to be unreasonable or arbitrary. In the instant case, it seems clear that the charges related directly to service and were certainly not trivial. Under *Guzell* we may not overturn the decision of the Commission based upon Holliday's contentions since it is apparent that his actions did not avoid all appearances of impropriety despite the fact he received no remuneration. No error.

## VI

■ The final issue raised by Holliday concerns the proof of the concept of conflict of interest and how it relates to proving cause upon which a Civil Service employee may be dismissed. Holliday's argument along these lines is basically that if he violated anything he violated only department guidelines and not department policy. His position is that in order to be discharged he must have violated what was a departmental rule which had been promulgated and had the force and effect of a law. He cites the Illinois Administrative Procedure Act (Ill. Rev. Stat. 1981, ch. 127, par. 1001 *et seq.*), Rule 27 of the Department of Revenue Handbook, and the case of *Bastian v. Personnel Board* (1982), 108 Ill. App. 3d 672, 439 N.E.2d 142, in support of his argument. The State responds that Civil Service employees may be removed for cause, citing section 11 of the Personnel Code (Ill. Rev. Stat. 1981, ch. 127, par. 63b111), arguing that conflicts of interest are included within the concept of cause. The State admits that while cause is not specifically defined, the supreme court has ruled that the Civil Service Commission is not required to specify by rule every act or omission which would be considered cause of discharge, citing *Joyce v. City of Chicago* (1905), 216 Ill. 466, 75 N.E. 184, and *Kammann v. City of Chicago* (1906), 222 Ill. 63, 78 N.E. 16.

■ Analysis of Holliday's authority reveals that the Illinois Administrative Procedure Act is clearly inapplicable to this situation. That act contemplates those situations wherein an agency is acting within its realm of authority to promulgate a rule which the public must follow, not internal affairs which are clearly covered by section 11 of the Personnel Code which as previously mentioned allows dismissals for "cause."

Similarly, the *Bastian* case dealt with the term "actual residence" in a Chicago ordinance which required that police live in Chicago in

order to be employed by that city's police department. No reference was made to maintaining alternate homes elsewhere and the court found that under these circumstances, the ordinance was too vague to be applied. However, in the case at bar examples and directions under the guidelines of the instant case abound.

It seems that Holliday's vagueness attack would be more apropos to the "for cause" standard of section 11, but this standard has clearly been sustained by the supreme court in the *Joyce* case. The State correctly notes that *Joyce* indicates that it would unduly burden the Civil Service to specify by rule every act or omission which could lead to discharge. Holliday's contention that the State must do so cannot prevail. Further, *Kammann* may be read as holding that "cause" need not be defined by published guidelines at all. In *Kammann*, an unexcused absence of three days was found to be cause for discharge even though no published rule to this effect was ever in existence, although a rule allowing replacement after 10 days' absence was. In *Kammann*, the court noted that "[t]he statute is silent as to what constitutes 'cause.' Manifestly the right to determine that question is left with the civil service commission ***." 222 Ill. 63, 65-66, 78 N.E. 16, 17.

In Holliday's case the Civil Service Commission determined that the questioned behavior represented cause for discharge. Since this is manifestly for the Commission to determine, it may be overturned by a court only if the decision was arbitrary or unreasonable. By taking an active part in collecting delinquent tax returns of a company owned by his wife, Holliday's actions were particularly egregious and represented cause for his discharge.

■ This leads us to a subargument raised by Holliday on this point which rests on similar ground. He argues that "cause" is not proven unless the State proves either neglect of duty or malfeasance in order to be supported by the evidence. Holliday urges that where an isolated incident of conduct did not involve illegal activity or evil wrongdoing, an employee cannot be discharged for cause, citing *Johnson v. Macon County Board* (1982), 104 Ill. App. 3d 885, 433 N.E.2d 707. The State correctly responds that *Johnson* dealt with a standard other than for cause. At issue in *Johnson* was the removal of a county superintendent of highways under section 5—203 of the Illinois Highway Code (Ill. Rev. Stat. 1981, ch. 121, par. 5—203), which provided that a superintendent of highways could be removed from office for "incompetence, neglect of duty or malfeasance in office." Since the standard in *Johnson* was not "for cause," the case has no application to the case presently before the court. The law in Illinois is that an

agency's decision as to cause will not be reversed unless it is arbitrary, unreasonable, or unrelated to the requirements of office. *Department of Mental Health & Developmental Disabilities v. Civil Service Com.* (1981), 85 Ill. 2d 547, 426 N.E.2d 885.

Since the discharge here appears to be not arbitrary or unreasonable and is clearly related to the requirements of service, the decision of the Commission to remove Holliday from service was supported by the evidence and is upheld by this court on appeal.

Affirmed.

TRAPP and WEBBER, JJ., concur.