CHARLES E. JOHNSON, Plaintiff-Appellant, *v.* MACON COUNTY BOARD, MACON COUNTY, Defendant-Appellee.

Fourth District   No. 17263

Opinion filed March 16, 1982.

886

Lloyd F. Latendresse, of Baird, Latendresse, McCarthy & Rowden, of Decatur, for appellant.

Basil G. Greanias, State's Attorney, of Decatur, for appellee.

JUSTICE WEBBER delivered the opinion of the court:

Plaintiff, Charles E. Johnson, appeals his removal as county superintendent of highways of Macon County. He was removed from office by the County Board of Macon County (Board) following a finding of neglect of duty and malfeasance in office. The conduct which led to

Johnson's removal was a single incident of intoxication. Upon administrative review by the circuit court of Macon County, the court affirmed the Board's order of removal but did find that the Board was in error in finding the plaintiff guilty of malfeasance in office.

Such terms as "neglect of duty" and "malfeasance in office" remain an abstraction until viewed in the light of the circumstances of each case. Therefore, we must discuss in some detail the factual background of the case at bar. At the time of the county board hearing, plaintiff was 55 years old and in his second six-year term in office, having first been appointed in October 1971. Johnson testified that on Thursday afternoon, December 4, 1980, he left his office at around 3 o'clock to make some inspections, after which he intended to go home. It was his intent to take the following day off to do things around his house, and he signed himself out for the following day in a book kept on the secretary's desk for that purpose. After going home, Johnson received a telephone call which caused him to be "worked up," and he therefore wanted to talk to Donald Cole, a highway department foreman, about the call. Johnson tried to telephone Cole at his house but talked to Cole's wife who informed him that Cole was busy and would call him back. Cole did not return the call that evening, and Johnson and his wife left for a dinner dance. Johnson testified he had dinner, danced with his wife, and had four or five drinks but was home by midnight.

On the following morning, December 5, 1980, Johnson testified, he got up around 5:30 or 6 o'clock. He consumed some coffee but ate no breakfast and also took some medication for nephritis and hypertension. At about 7:30 a.m., Johnson left in a county car and met Donald Cole at the county highway depot. Johnson testified that he had a conversation with Cole at the depot; he told Cole that he was going to his office, then to make a final check on some guardrails, and then go home for the day. Johnson arrived at the county building at around 8 o'clock and chatted with the recorder of deeds for a few minutes before proceeding to his own office. According to Johnson, after getting to his office he received a telephone call from Cole who wanted to go with Johnson to examine the guardrails in case anything was wrong. Cole then informed Johnson that he would pick Johnson up in his car to go out to make the inspection. Cole then picked up Johnson at the county building, and they proceeded in Cole's county car out to the inspection site, where they made the inspection. Thereafter, Cole then informed Johnson that he wanted to take Johnson to Cole's home so that Johnson could talk to Cole's wife about the telephone call of the previous evening. Cole, according to Johnson, wanted it explained to Johnson that the reason Cole had neglected to return Johnson's call was that Cole's wife had failed to inform him that Johnson had called. After arriving at Cole's house,

Johnson testified that he did not suggest having a drink to Cole, but that at Cole's house, Cole did serve him with a double shot of whiskey and a beer. Johnson testified that he had consumed no alcoholic beverages prior to that time on the day in question. After having two drinks at Cole's house, Johnson testified that he did not feel well and asked Cole to take him home. On the way to Johnson's home, Johnson testified that he either went to sleep or blacked out. After arriving home, Johnson went to sleep on the living room couch.

The testimony of Donald Cole differed substantially from that of Johnson. Cole testified that it was Johnson who called him to take him to the inspection site and, after examining the guardrail site, Cole testified that it was Johnson who mentioned a couple of times about having a drink. Cole did not want to go anywhere with Johnson to have a drink, so he took Johnson to his house. According to Cole, each had a double shot of whiskey, and Johnson asked for another drink. Johnson then drank one beer and asked for another. As they were leaving Cole's house, Johnson was carrying two cans of beer and stumbled and spilled one of them. During the drive to Johnson's house, Johnson passed out, and, in Cole's opinion, Johnson was intoxicated. After arriving at Johnson's house, Johnson fell into the bushes, and Cole had to help Johnson out of the bushes and into the house. Cole did not see Johnson again until later that afternoon.

Johnson's further testimony was that about 2:30 in the afternoon, he got up from the couch and telephoned Cole to take him to the county building to pick up his county car. Johnson also called his secretary and asked whether a certain piece of mail that he had been waiting to receive had arrived. While waiting for Cole, Johnson had another drink. As Johnson and Cole then proceeded to the county building in Cole's county car, they passed the chairman of the transportation committee of the county board. Cole had informed the chairman earlier in the day that Johnson had been drinking that morning. The chairman of the transportation committee then proceeded to the county building and waited for Cole and Johnson to arrive. The chairman testified that he observed Johnson slumped in the seat of the car with his head hung to one side. He could tell from the way Johnson was sitting and the red condition of his face that Johnson had been drinking that day. The chairman then testified that he informed Johnson that he was suspended until further notice.

Johnson then went to his office in the county building in order to look at his mail. He testified he was in his office only for about 10 or 15 minutes and then drove directly home. According to Johnson's secretary, Johnson was slumped at his desk and very red faced. He was sitting at his desk trying to read the mail but had great difficulty in using the dater stamp and would drop it on the floor. The chairman of the transportation

committee then came into his office and again ordered him to go home.

Basing their decision upon the foregoing chain of events, the chairman and members of the transportation committee of the Macon County Board brought a written petition before the Board charging the plaintiff with neglect of duty and malfeasance in office. The petition alleged that Charles E. Johnson was "guilty of neglect of duty and malfeasance in office in the following manner:

A. THAT on or about 7:30 a.m. of the said day and date, the said Charles E. Johnson drove a county highway vehicle to the county highway depot on 2400 North Woodford, Decatur, Illinois, and pulled his automobile into the drive to said depot preventing vehicles from entering or leaving said premises and engaged in a dispute with Don Cole, Foreman of the County Highway Garage, while under the influence of intoxicating liquor.

B. THAT at a later time, around 9:00 a.m., the said Charles Johnson had Donald Cole, the Macon County Highway Foreman, take him in a Macon County Highway car to the home of Don Cole and asked him to provide him with alcoholic beverages, which he did and which he drank and which eventually caused him to pass out and otherwise become further under the influence of intoxicating liquor, making him unfit to continue his duties that day.

C. THAT the said Donald Cole then delivered Mr. Johnson to his residence and was later called by Mr. Johnson to pick him up and return him to the County Building so that Mr. Johnson could bring home the county vehicle assigned to him, which was parked behind the County Building by Mr. Johnson that morning, and that at the time that Mr. Cole picked him up, he was in the process of consuming alcoholic beverages and consumed additional intoxicating beverages prior to returning to the County Building with Mr. Cole, all of which rendered him unfit to conduct his duties as County Superintendent of Highway.

D. THAT upon arriving at the Macon County Building, although in a state of intoxication, and having been ordered by the Chairman of the County Highway Committee not to take the county highway car, but to permit Donald Cole to drive him home, the said Charles Johnson did drive the county vehicle to his home, while under the influence of intoxicating liquor.

E. THAT during the time after he arrived at the Macon County Building, Charles Johnson attempted to conduct county business while in a state of intoxication and attempted to supervise other persons in his office while not in a condition to do so at said date, time and place."

On January 28, 1981, the Board convened and heard the preceding evidence on the petition. Following the testimony of the witnesses, it was moved by a board member to remove Johnson as superintendent of highways. It was also moved that one vote should be taken as to whether all the subparagraphs had been proved alleging the neglect of duty and malfeasance in office. That motion was then amended to remove subparagraph (a) of the petition as it was believed that there was no testimony verifying that Johnson was intoxicated at 7:30 a.m. the morning of December 5, 1980. The motion to dismiss Johnson as superintendent carried by a margin of one vote. The plaintiff then filed a complaint for administrative review in the circuit court. On May 21, 1981, the circuit court entered a written order finding that the Board's order of dismissal was not against the manifest weight of the evidence and affirmed the order of dismissal, but did make a finding that the Board's finding of malfeasance in office was against the manifest weight of the evidence. The plaintiff now brings this appeal.

Removal from office of a county superintendent of highways is governed by section 5—203 of the Illinois Highway Code (Ill. Rev. Stat. 1979, ch. 121, par. 5—203) which provides:

"Any county superintendent of highways may be removed from office by the county board for incompetence, neglect of duty or malfeasance in office. In any proceeding to remove a county superintendent of highways from office a petition shall be filed with the county board naming such officer as respondent and setting forth the particular facts upon which the request for removal is based. The county board shall set the matter for hearing not earlier than 5 days after service upon the respondent, which service shall be the same as in civil actions. The county board shall thereupon proceed to a determination of the charges and shall enter an order either dismissing the charge against the county superintendent of highways or removing him from office.

The decision of the county board is subject to judicial review under the Administrative Review Act as now or hereafter amended."

Johnson contends on appeal that the acts of which he was accused would not, even if proved, constitute grounds for his removal as county superintendent of highways, and do not constitute either "malfeasance in office" or "neglect of duty."

Although affirming the county board's order of dismissal, the trial court held that the Board was in error in finding Johnson guilty of malfeasance in office. The written order notes that malfeasance, according to Black's Law Dictionary, implies evildoing or dishonest conduct. The court found that Johnson's conduct was not evil or dishonest and that the finding of malfeasance was against the manifest weight of the

evidence. We agree that Johnson's conduct cannot be characterized as "malfeasance in office."

As most statutes involving removal of a public official or officer in Illinois require "cause" to justify removal, there is little authority defining malfeasance in office. What authority exists appears to be within a criminal context. In *Summers v. People* (1903), 109 Ill. App. 430, the defendant was charged with being guilty of malfeasance in office as a commissioner of highways for diverting public funds for repair of a private road. There was some question in that case as to whether or not the road in question was in fact a public or private road, and the court concluded that the defendant had acted in good faith but had exercised bad judgment. As the evidence did not show a corrupt motive, the court held that the defendant could not be found guilty of malfeasance in office.

■■■ The definition of "malfeasance" as set forth in Webster's Second New International Dictionary 1489 (1941) is, "The doing of an act which a person ought not to do; evil conduct; an illegal deed." The general rule seems to be that to warrant the removal of an officer for malfeasance in office, the malfeasance must have direct relation to, and be connected with, the performance of official duties, and amount to wilful and intentional neglect and failure to discharge the duties of the office. It also appears that malfeasance, as a ground for removal of a public officer, generally must have reference to evil conduct or an illegal deed or the performance of an act by an officer in his official capacity that is wholly illegal and wrongful. (63 Am. Jur. 2d *Public Officers and Employees* §190 (1972).) Without belaboring the point, we hold that since Johnson's conduct did not involve any evil wrongdoing or illegal activity connected with his office, he could not be removed from office for malfeasance.

■■ The question of whether Johnson's conduct amounts to neglect of duty poses the more nettlesome problem. As with malfeasance in office, the term of neglect of duty has seemingly escaped definition in Illinois. While it has been held that neglect of duty would constitute cause (*Hardaway v. Civil Service Com.* (1977), 52 Ill. App. 3d 494, 367 N.E.2d 778), we believe that "cause" is a much broader concept than neglect of duty. It is well established in Illinois that cause is defined as some substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which law and public opinion recognizes as good cause for his no longer holding a position. (*Fantozzi v. Board of Fire & Police Commissioners* (1963), 27 Ill. 2d 357, 189 N.E.2d 275.) It is also established that the shortcomings need not be directly connected with the performance of the work. (*Cutright v. Civil Service Com.* (1970), 128 Ill. App. 2d 331, 262 N.E.2d 102.) The shortcomings, however, must not be so

trivial or arbitrary as to be unreasonable. (*Petraitis v. Board of Fire & Police Commissioners* (1975), 31 Ill. App. 3d 864, 335 N.E.2d 126.) Since we believe the concept of neglect of duty is a more specific standard than cause, we do not consider the abundant authority regarding cause as being particularly helpful.

■■ Section 5—201 of the Illinois Highway Code (Ill. Rev. Stat. 1979, ch. 121, par. 5—201) contemplates highly qualified personnel to occupy the position of county superintendent of highways. Detailed requirements are set out in section 5—201 before a candidate can be appointed by the county board to the position. It follows, therefore, that a county superintendent of highways should be removed for only serious reasons.

In *Hansen v. Donna Lane Motor Ship Corp.* (W.D. Wash. 1924), 299 F. 977, the court held that neglect of duty implies continued neglect, not a single act of neglect. In *People v. McCaughan* (1957), 49 Cal. 2d 409, 317 P.2d 974, the California Supreme Court noted that neglect of duty has an accepted legal meaning which means an intentional or grossly negligent failure to exercise due diligence in the performance of a known duty. In *Rapaport v. Civil Service Com.* (1933), 134 Cal. App. 319, 25 P.2d 265, the court noted that where the removal of a public official is based upon neglect of duty it has often been held that the public official should not be removed from office unless he has refused or neglected to perform an official duty pertaining thereto in some substantial respect. In *Holmes v. Osborn* (1941), 57 Ariz. 522, 539, 115 P.2d 775, 783, the Arizona Supreme Court analyzed a statute which authorized the governor to remove members of an industrial commission for "inefficiency, neglect of duty, malfeasance, misfeasance and nonfeasance in office." The court noted that nonfeasance and neglect of duty as being the same thing with nonfeasance being a substantial failure by an officer to perform his duty.

■■ ■ We hold that to constitute sufficient neglect of duty to justify removal, the neglect of duty must be a substantial failure to perform the official duties of the office. Applied to the case at bar, we conclude that under the circumstances of this case, an isolated incident of intoxication does not amount to neglect of duty sufficient to warrant removal. Other than general allegations of intoxication and unfitness, the written petition charging Johnson with neglect of duty fails to set forth any allegations that Johnson failed to perform any of his official duties. Therefore, the allegations of the petition are insufficient to justify Johnson's removal. In our holding, it is not our intention to imply that repeated incidents such as this would not amount to neglect of duty. Nor do we hold that, under different circumstances, an isolated incident would not amount to neglect of duty if it could be shown that the conduct led to a substantial failure to perform some official duty. There is no indication in the record here that the complaint was anything but an isolated incident, and apparently the

county board failed even to consider Johnson's prior record. As there has been no showing of a substantial failure to perform official duties connected with the office, the county board's order of removal is in error. ■■ ■ In view of our holding, we need only briefly touch upon the remaining issues which Johnson raises. He sets forth a detailed analysis of the day in question and debates at which points he was on or off duty. We decline to engage in such line drawing as to when Johnson was "on duty." Whatever Johnson's intent was to take the day off, it is apparent that Johnson performed some of the functions of his job during the day in question. As the position is more in the nature of a professional one, rather than punching a clock, we find no merit in his contention that much of the conduct in question occurred in off-duty hours. Likewise, we find no merit in Johnson's contention that the Board's findings are insufficient because the Board failed to vote on the ultimate issues of the case. The Board combined into one vote whether the allegations of the petition had been proved and whether Johnson should be removed from office. Johnson maintains that the Board failed to vote as to whether Johnson was guilty of neglect of duty and malfeasance in office. However, the entire petition was read to the Board in its entirety, and the meanings of neglect of duty and malfeasance in office were extensively discussed. The legal conclusion of neglect of duty and malfeasance in office is implicit in the Board's finding.

In view of the foregoing, the order of the circuit court of Macon County, insofar as it finds that the Board's finding malfeasance in office as a ground for discharge was against the manifest weight of the evidence, is affirmed; the order affirming the finding of neglect of duty and discharge of the plaintiff is reversed, and the cause is remanded to the circuit court of Macon County with directions to order the reinstatement of the plaintiff as county superintendent of highways of Macon County.

Affirmed in part, reversed in part and remanded with directions.

GREEN, P. J., and LONDRIGAN, J., concur.