JUDY WHITSON MADDOX, Plaintiff-Appellee, v. WILLIAMSON COUNTY BOARD OF COMMISSIONERS, Defendant-Appellant.

Fifth District    No. 5—83—0818

Opinion filed February 27, 1985.

J. Lawrence Sanders, of James W. Sanders & Associates, of Marion, for appellant.

William P. Novick, of Fowler and Novick, of Marion, for appellee.

PRESIDING JUSTICE JONES delivered the opinion of the court:

The plaintiff, Judy Whitson Maddox, brought the instant action for review of a decision by the Williamson County Board of Commissioners (board) to terminate her appointment as supervisor of assessments of Williamson County. The trial court, finding that the record was insufficient to sustain the board's dismissal of the plaintiff, reversed the board's decision and entered judgment for the plaintiff. On appeal the board contends, first, that the trial court lacked subject-matter jurisdiction to review its decision dismissing the plaintiff and, second, that the court erred in reversing that decision when it was not against the manifest weight of the evidence. We affirm.

The plaintiff was appointed by the board as supervisor of assessments of Williamson County in November 1977 and was reappointed to that position in December 1981. On March 23, 1983, following a dispute over the firing of an employee in the assessor's office, the board notified the plaintiff in writing of the termination of her employment as supervisor of assessments. The board listed the following

actions by the plaintiff as reasons for her dismissal:

"1. Initiating Board of Review action without prior approval, in that she directed employees to reduce assessments on all pole barns. In addition, she directed employees not to inform a Board of Review member of the changes.

2. Practicing a discriminatory policy of arbitrarily setting dates for the owner-occupied exemptions without applying the intent of the legislature and the law.

3. Not performing quadrennial reassessments [*sic*] as required by law.

4. For [*sic*] not assessing property at the mandated one-third level of market value.

5. For [*sic*] terminating, without just cause, an employee of the office of the Supervisor of Assessments, thereby exposing the County to liability for monetary judgment."

Pursuant to the plaintiff's request, the board held a hearing regarding the plaintiff's termination on May 11, 17, and 18, 1983. The plaintiff was present and was represented by counsel. At the hearing the plaintiff presented evidence as to the first reason listed in the notice of termination, that she had received the verbal approval of two of the board members to lower the assessments on pole barns before making such changes. She had been unable to discuss the pole barn changes with the third board member but had written letters to the individual members prior to her dismissal requesting their review of these structures and had received no response. The plaintiff stated further that her employees had been instructed not to make final changes to the property record cards on pole barns and to direct all inquiries regarding these and other valuation estimates to herself.

The plaintiff testified regarding the second reason listed in the board's notice of termination, that, although the statute in question contained a cut-off date for filing owner-occupied exemption certificates (Ill. Rev. Stat. 1983, ch. 120, par. 500), the board had at various times in the past adopted a policy extending the time for filing such certificates, with which the plaintiff had complied. This testimony was corroborated by testimony of the county clerk and a former board commissioner who had served with the plaintiff and by a newspaper article stating such a board policy for tax year 1981, which was offered into evidence by the plaintiff.

Regarding the plaintiff's failure to perform quadrennial assessments, listed in the board's notice as the third reason for her dismissal as supervisor of assessments, the plaintiff stated that she had requested funds from the board for that purpose in February 1981,

August 1981, August 1982 and February 1983 but that the board had failed or refused to provide such funds. Two letters to the board and two annual budgets to that effect were offered into evidence by the plaintiff. The plaintiff stated further that when she had begun her job as supervisor of assessments in 1977, the board was encountering problems implementing a newly enacted "farm bill" and had made a decision to forego the quadrennial assessment for 1979 because of the prohibitive cost involved and the lack of manpower and time necessary to accomplish a complete reassessment. While it was undisputed that no funds had been appropriated by the board for a quadrennial assessment during the plaintiff's tenure as supervisor of assessments, there was testimony by one of the commissioners that a quadrennial assessment could have been initiated "at least in some piecemeal fashion" with surplus funds in the plaintiff's budget.

The plaintiff testified regarding the failure to assess property at the mandated one-third level of market value, the fourth reason listed in the board's notice of termination, that it was practically impossible to so assess property without first performing a quadrennial assessment. Rather, she had been instructed in courses and seminars on proper assessment procedures that it was more important to strive for equalization within the county and then apply the State multiplier county-wide to bring the assessment up to the required level. In addition, the board had directed the plaintiff not to "chase sales" since it would be unfair to assess new or recently sold properties at one-third of their sales price and then apply the State multiplier without considering the values of other properties in the area. It had been the procedure in the plaintiff's office to take 35% of the value arrived at by using a 1974 cost manual, which had resulted in an average county-wide assessment level of 18% before the State multiplier was applied. The plaintiff had specifically advised the board in requesting funds for a quadrennial assessment that such an assessment was necessary to achieve equalization within the county.

Regarding the fifth reason stated for the plaintiff's dismissal, the termination of an employee in her office without just cause, the plaintiff cited instances of the lack of cooperation, general insubordination, failure "to want to follow" instructions, and the releasing of information without authority that were given as reasons for the employee's dismissal in a letter to that employee on March 16, 1983. Specifically, the plaintiff testified that the employee in question had "[taken] it upon herself" to explain the changes in the pole barn assessments to a member of the board before the plaintiff had had an opportunity to discuss these changes with that member herself and had made final

changes to the property record cards on pole barns in violation of the plaintiff's instructions to the contrary.

At the close of the hearing the board, by a vote of two of the three commissioners, reaffirmed its decision terminating the plaintiff's employment. The plaintiff then filed a complaint in the circuit court of Williamson County for review of the board's decision under the Administrative Review Law (Ill. Rev. Stat. 1983, ch. 110, par. 3—101 *et seq.*).

Following arguments by the parties, the trial court entered judgment for the plaintiff in an extensive and well-reasoned memorandum of judgment. Noting that, by statute (Ill. Rev. Stat. 1983, ch. 120, par. 484a) amended effective November 12, 1981, the plaintiff could be removed from office by a two-thirds vote of the county board for "misfeasance, malfeasance or nonfeasance in the performance of the duties of [her] office," the court found that the record of the administrative hearing failed to show such conduct that would warrant the plaintiff's dismissal. The court stated specifically:

> "Under the facts before the Court, none of the five reasons could legally be construed to be *malfeasance* in office. If proven, reasons one, two and five could be legally construed as *misfeasance* in office. If proven, reasons three and four could be legally construed as *nonfeasance* in office. Whether or not the reasons, based upon the record, are legally misfeasance or nonfeasance in office is the critical question before this Court."

Observing that the board had made no findings of fact as to any of the five reasons listed for the plaintiff's termination, the court continued:

> "IT IS *** THE FINDING OF THIS COURT that reasons one, two and five are conclusions of two members of the Williamson County Board which are not supported by any evidence produced at the hearing. Secondly, in view of the fact that the Williamson County Board of Review had the final responsibility for points one and two and that JUDY WHITSON MADDOX had full authority to act as she did in point number five, these points should be dismissed.
>
> There is no question but that quadriannual [*sic*] assessments as required by law have not been done in Williamson County, Illinois, during the term of office of JUDY WHITSON MADDOX. Neither is there any question that Williamson County is not assessing property at a level of one-third of market value as mandated by the General Assembly of Illinois. There is a serious question, however, whether this noncompliance can be

laid at the doorstep of JUDY WHITSON MADDOX.

Throughout the entire period, the Williamson County Board, acting as the Williamson County Board of Review, had the final determination on both of those matters. Secondly, until the Notice of Termination, the Williamson County Board of Review at no time questioned the fact that JUDY WHITSON MADDOX had not performed those functions. On the contrary, the evidence is clear that JUDY WHITSON MADDOX, on several occasions, requested the Williamson County Board to appropriate money so that both of these functions could be accomplished. The Williamson County Board chose to deny or to ignore those requests.

IT IS THE FURTHER FINDING OF THIS COURT that the Williamson County Board cannot terminate an Officer of Williamson County for nonfeasance of office when the Board has refused to appropriate funds necessary to accomplish the required function.

It is clear from the Statute of the State of Illinois that the County Board, in a commission form of county government, has the duty and the responsibility to provide the Supervisor of Assessments with funds to hire sufficient deputy assessors to perform the acts required by the Legislature of the State of Illinois. Real estate taxation in a county the size of Williamson is a difficult task at best. Real estate taxation in a county the size of Williamson is an impossible task when the County Board refuses to provide the personnel and money necessary to perform that function."

The court concluded, therefore, that the decision of the board to terminate the plaintiff's employment as supervisor of assessments "based upon the notice of termination and the evidence produced at the hearing" should be reversed. The board subsequently filed the instant appeal from that judgment.

■ On appeal the board contends initially that the plaintiff's complaint for administrative review was ineffective to vest the trial court with subject-matter jurisdiction to review its decision because there was no provision for such review in the statute for removal of a supervisor of assessments under which the board acted. Thus, the board asserts, review was available to the plaintiff only by means of common law *certiorari*, and, since the plaintiff failed to follow such procedure, the trial court was without jurisdiction to review the board's decision terminating the plaintiff's appointment as supervisor of assessments.

We find no merit in this argument by the board, as the supreme court has held under similar circumstances that "the substantial differences that at one time existed between common law and statutory *certiorari* have been all but obliterated." (*Smith v. Department of Public Aid* (1977), 67 Ill. 2d 529, 541, 367 N.E.2d 1286, 1293; *Homefinders, Inc. v. City of Evanston* (1976), 65 Ill. 2d 115, 357 N.E.2d 785; *Nowicki v. Evanston Fair Housing Review Board* (1975), 62 Ill. 2d 11, 338 N.E.2d 186; see also *Quinlan & Tyson, Inc. v. City of Evanston* (1975), 25 Ill. App. 3d 879, 324 N.E.2d 65.) In those cases, as in the instant case, even though the administrative agencies' decisions were not reviewable under the Administrative Review Law, they were nonetheless reviewable by common law *certiorari*. Despite the inapplicability of the Administrative Review Law, the complaints purportedly filed under the Law in *Nowicki, Homefinders* and *Quinlan* were held to be sufficient to authorize review under common law *certiorari*. (*Smith v. Department of Public Aid* (1977), 67 Ill. 2d 529, 367 N.E.2d 1286; *cf. Homefinders, Inc. v. City of Evanston* (1976), 65 Ill. 2d 115, 357 N.E.2d 785 (complaint, though entitled "Complaint for Administrative Review" and including a prayer for review under the Administrative Review Law, was sufficient to warrant treatment as a common law writ of *certiorari* instead of solely an action under the Administrative Review Law).) Since, as detailed by the *Quinlan* court, the procedure for judicial review of administrative decisions by way of *certiorari* closely resembles that for review under the Administrative Review Law and since "[l]abels have long since lost their significance in determining the legal sufficiency of a complaint in [actions] at law and in equity and *** should [not] retain significance in actions to review the determinations of administrative agencies" (*Nowicki v. Evanston Fair Housing Review Board* (1975), 62 Ill. 2d 11, 15, 338 N.E.2d 186, 188), we hold that the plaintiff's complaint in the instant case, though filed under the Administrative Review Law, was sufficient to vest the trial court with jurisdiction to review the board's decision.

■■ The board asserts, in the alternative, that even if the trial court properly had jurisdiction to review its decision terminating the plaintiff's employment, the court erred in reversing that decision when it was not against the manifest weight of the evidence. The standard to be applied in reviewing agency findings under common law *certiorari*, as in statutory *certiorari* proceedings, is whether the record contains any evidence which fairly tends to support the agency's findings. (*S & F Corp. v. Daley* (1978), 59 Ill. App. 3d 1024, 376 N.E.2d 699.) A reviewing court thus will not reweigh the evidence

and may set aside the agency's findings only if they are palpably or manifestly against the weight of the evidence. (*S & F Corp. v. Daley* (1978), 59 Ill. App. 3d 1024, 376 N.E.2d 699; *Quinlan & Tyson, Inc. v. City of Evanston* (1975), 25 Ill. App. 3d 879, 324 N.E.2d 65.) Review of an agency's decision regarding discharge of an employee, however, requires a further determination that the agency's findings of fact are sufficient to warrant discharge under the applicable standard of conduct. (*Batley v. Kendall County Sheriff's Department Merit Com.* (1981), 99 Ill. App. 3d 622, 425 N.E.2d 1201; see *Johnson v. Macon County Board* (1982), 104 Ill. App. 3d 885, 433 N.E.2d 707.) This is necessarily a question of the legal sufficiency of the conduct charged, and, despite the substantial deference given an agency's determination in this regard, its decision to discharge will be overturned where found to be arbitrary and unreasonable. See *Batley v. Kendall County Sheriff's Department Merit Com.* (1981), 99 Ill. App. 3d 622, 425 N.E.2d 1201; *Johnson v. Macon County Board* (1982), 104 Ill. App. 3d 885, 433 N.E.2d 707.

■ The statute at issue in the instant case governing removal of a supervisor of assessments during his or her term in office provides in pertinent part:

"[T]he county board, by a vote of ⅔ of its members, may dismiss a supervisor of assessments prior to the expiration of his term for *misfeasance, malfeasance* or *nonfeasance* in the performance of the duties of his office." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 120, par. 484a.)

The statute contains no definition of "misfeasance," "malfeasance" or "nonfeasance," and we are aware of no authority construing this provision, added by amendment to the statute in 1981. (See generally *Macaluso v. West* (1976), 40 Ill. App. 3d 392, 352 N.E.2d 382 (prior to amendment, county board had no power to remove supervisor of assessments, who was subject to removal only under sections 322 through 344 of the Revenue Act of 1939 (Ill. Rev. Stat. 1983, ch. 120, pars. 803 through 805), following an adjudication of knowing neglect or evasion of duty).) Moreover, while the propriety of the plaintiff's removal from office depends upon the meaning given the terms "misfeasance," "malfeasance" and "nonfeasance," we have found little Illinois authority defining these terms in other contexts.

In dealing with a statutory provision for removal of a public official for "neglect of duty" or "malfeasance in office" (see Ill. Rev. Stat. 1979, ch. 121, par. 5—203), the court in *Johnson v. Macon County Board* noted the dictionary definition of "malfeasance" as "[t]he doing of an act which a person ought not to do; *** an illegal

deed" (*Johnson v. Macon County Board* (1982), 104 Ill. App. 3d 885, 891, 433 N.E.2d 707, 711), and stated:

> "[M]alfeasance, as a ground for removal of a public officer, generally must have reference to evil conduct or an illegal deed or the performance of an act by an officer in his official capacity that is wholly illegal or wrongful." 104 Ill. App. 3d 885, 891, 433 N.E.2d 707, 711.

The court found the definition of "neglect of duty," which it equated with "nonfeasance," to be more troublesome, but expressly declared that this concept was a narrower or more specific standard than that of "cause," commonly set forth as the standard for removal of public officials (see also *Holliday v. Civil Service Com.* (1984), 121 Ill. App. 3d 763, 460 N.E.2d 358). The court held, therefore, that to constitute "neglect of duty" sufficient to warrant removal from office, the conduct complained of must have been a substantial failure to perform the official duties of the office. Since, in *Johnson*, there was no indication that the complaint was anything but an isolated incident and the county board had failed even to consider the dismissed officer's prior record, the court found the board's order of dismissal to be in error.

As in *Johnson*, the plaintiff's conduct here must be considered in light of the commonly accepted meanings of the terms "misfeasance," "malfeasance" and "nonfeasance," with the proviso that conduct coming within the scope of these terms be substantial or without sufficient excuse (see 67 C.J.S. *Officers* sec. 122, at 492 (1978)) in order to warrant removal from office. As noted by the *Johnson* court, "malfeasance," as a ground for removal of a public officer, is the performance of an act in one's official capacity that is wholly wrong or unlawful, while "nonfeasance" is the neglect or failure to perform duties of an office that are required by law. "Misfeasance," on the other hand, has reference to the performance by an officer in his official capacity of a lawful act in an improper or illegal manner. See Ballentine's Law Dictionary 767, 806, 858 (3d ed. 1969); 63A Am. Jur. 2d *Public Officers & Employees* secs. 246, 250 (1984); 67 C.J.S. *Officers* secs. 122, 123 (1978); see also *Holmes v. Osborn* (1941), 57 Ariz. 522, 115 P.2d 775.

In the instant case the trial court determined, from the facts before it on review of the board's order of dismissal, that none of the five reasons stated for the plaintiff's dismissal could be legally construed to be malfeasance in office. We agree with this assessment since the plaintiff's conduct did not in any way involve evil wrongdoing or illegal activity in connection with the duties of her office. *Cf. Johnson v. Macon County Board* (1982), 104 Ill. App. 3d 885, 433

N.E.2d 707 (officer's intoxication while on duty not illegal or wrongful so as to constitute malfeasance in office).

While the trial court agreed with the board's further assertion that reasons one, two and five of the board's order—lowering pole barn assessments without board approval, arbitrarily setting cut-off dates for the owner-occupied exemptions, and dismissing an employee of the assessor's office without just cause—could be characterized as misfeasance in office, the court specifically found that these charges were not supported by evidence produced at the hearing. Our review of the record leads to the same conclusion. There was no showing that the plaintiff's actions in lowering pole barn assessments were improper since, in addition to having statutory authority herself to make such changes (Ill. Rev. Stat. 1983, ch 120, par. 527), she sought and obtained the seeming approval of two of the board members before instituting this procedure and instructed her employees not to make final changes to the property record cards on pole barns pending her discussion of the matter with the third board member. We find no basis, moreover, for the additional claim that the plaintiff "directed [her] employees not to inform a [board] member of the changes [on pole barn assessments]." While the evidence showed that it was the plaintiff's policy to have all valuation questions referred to herself personally, there was no indication that she sought to conceal information from the board by this or other means.

The record likewise fails to support the board's charge that the plaintiff acted improperly in setting dates for the owner-occupied exemptions, as the evidence showed that the application dates for these exemptions had been set by board policy. The board's further claim, that the plaintiff terminated an employee of her office without just cause and thereby exposed the county to liability for monetary judgment, similarly states a conclusion unsupported by facts. The record before us contains no showing that the employee's dismissal was unwarranted or that such dismissal resulted in liability to the county, and we thus find no basis for this charge.

■■ The remaining reasons stated for the plaintiff's dismissal—failure to perform quadrennial assessments and failure to assess property at the mandated one-third level of market value—could, as the trial court observed, be construed as nonfeasance in office. There is no question, moreover, as to the factual basis for these charges, as the plaintiff stipulated that quadrennial assessments had not been performed for the years 1978 and 1982 and that property had been assessed below the mandated level of $33\frac{1}{3}\%$ of market value. The record shows, however, that the plaintiff's failure to perform these duties

of her office resulted, not from unwillingness on her part, but from the board's own failure to appropriate the funds necessary to perform the quadrennial assessments. While the board calls attention to the surplus funds remaining in the plaintiff's budget from year to year, it is not contended that these amounts were in any way adequate to accomplish the required assessments. Under these circumstances, the plaintiff's failure in the duties of her office cannot be deemed sufficient to warrant her discharge on the grounds of nonfeasance, and we, accordingly, agree with the trial court's finding to this effect.

For the reasons stated in this opinion, the judgment of the circuit court of Williamson County is affirmed.

Affirmed.

KASSERMAN and WELCH, JJ., concur.