MICHAEL ROSS, Petitioner-Appellant, v. CIVIL SERVICE COMMISSION OF COOK COUNTY, Respondent-Appellee.

First District (2nd Division)   No. 1—91—3816

Opinion filed August 3, 1993.

Katz, Friedman, Schur & Eagle, of Chicago (Irving M. Friedman and Denise S. Poloyac, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Karen Covy, Karen J. Dimond, and Joan T. Agnew, Assistant State's Attorneys, of counsel), for appellee.

JUSTICE SCARIANO delivered the opinion of the court:

On October 26, 1989, petitioner Michael Ross was suspended from his job as an emergency room technician (EMT) at Cermak Health Services (Cermak) for using profane language while examining newly arrived detainees on September 8, 1989. As of the latter date, petitioner had been employed for eight years and three months in the intake area at Cermak, which was located at 2800 South California Avenue on the grounds of the Cook County Department of Corrections. His duties consisted primarily of performing medical examinations of inmates who are initially brought to the correctional facility, including

drawing blood samples, administering TB tests, and conducting urethral swab examinations.

On October 27, 1989, Cermak filed written charges with respondent Civil Service Commission (commission) seeking petitioner's discharge on the grounds that on September 8, 1989, he mistreated patients by using abusive language, failed to follow instructions as per county procedures, violated security rules and regulations, and failed to perform his job duties at a satisfactory level in violation of sections 1, 9, 22 and 24 of the Cook County Rules and Regulations Governing Employee Conduct (Rules and Regulations).

On January 9, 1990, a hearing was held on Cermak's complaint before the commission seeking petitioner's discharge. Leonard R. Bersky, the director of Cermak, testified that on August 3, 1987, petitioner was advised in a written memorandum that as an EMT, he was required to treat detainees courteously at all times, and that he should disengage himself from any situation where the inmate becomes abusive. Bersky also identified a memorandum in petitioner's personnel file from his supervisor, John M. Raba, M.D., which counselled him for telling an inmate on September 18, 1988, to "[g]et your ass up against the wall" while petitioner was performing a urethral swab examination. He further testified that petitioner was given a 29-day suspension for slapping and verbally abusing an inmate on July 22, 1989, although he admitted on cross-examination that the entire grievance procedure for that violation had not been completely exhausted as of the date of the hearing.

Avery Johnson, Jr., the supervisor of all EMTs at Cermak, testified that he circulated several memoranda to all EMTs warning them not to use profanity while treating the inmates. He also stated that he received a report from petitioner's immediate supervisor, Howard Hradek, wherein Hradek stated that while he was not present on the evening of September 8, 1989, he was aware that petitioner sometimes exhibited "aggressive behavior" toward inmates and often used his size and strong voice to intimidate them.

Lucille Gauger testified that on September 8, 1989, her first day on the job as an EMT at Cermak, she was working alongside petitioner, who was drawing blood from and performing urethral swab examinations on inmates. She testified that she observed petitioner throughout the night using "very hostile" language, including racial slurs and profanity, toward the inmates while he was treating them. Gauger felt that such behavior was particularly inappropriate due to the extreme volatility present in the intake room where many of the inmates were taken immediately following their arrest. Because she

thought that petitioner's behavior was outrageous, Gauger wrote a memorandum, which was admitted into evidence, to Dr. Raba the following Monday (September 8 was a Friday) detailing her observations of plaintiff, including that he used language such as "sit your skinny ass down in that chair," "get your black ass over here," and "shut the fuck up." She further testified that the inmates appeared to be frightened by petitioner's behavior.

Callie Wallace, an EMT at Cermak and a friend of petitioner, testified that she did not hear petitioner use any profanity toward the inmates while she was working on September 8, 1989. Wallace further stated that she sometimes worked as a supervisor, and in that capacity, she never received any complaints regarding his conduct.

Finally, petitioner testified on his own behalf that the intake area was in fact an extremely volatile place, in part because the inmates were subjected to intrusive medical examinations almost immediately after detention; therefore, he was aware of Cermak's policy against using profanity with the inmates. He also stated that he received a grade of "excellent performance—beyond satisfactory fulfillment of job requirements" on his last two progress evaluations for the time period of September 1, 1988, to September 1, 1989. With respect to the allegations levelled against him in Cermak's complaint, he testified that he did not think that the memorandum regarding the prohibition against verbal abuse of inmates dated August 3, 1987, was in response to any particular incident in which he was involved. Although he admitted that he occasionally used profanity at work, he vehemently denied that he ever used such language while addressing an inmate, and he specifically denied verbally abusing anyone on September 8, 1989. However, he stated that he typically instructs patients to "grab their butt and back up against the wall" when preparing an inmate who is resisting a urethral swab examination; and when asked by one of the commissioners if he might have used the word "ass" instead of "butt," he responded "[p]ossible, yes *** [l]ikely, no."

On March 13, 1990, the commission found petitioner had committed the actions charged in the complaint, and that the record was replete with instances up to and including September 8, 1989, where he was rude, belligerent, and used profanity when addressing the inmates who were under his direction and control. The commission also found petitioner's testimony regarding his conduct on the date in question to be unbelievable. After finding that his conduct warranted disciplinary action, the commission determined the proper sanction to be discharge.

Petitioner thereafter filed a petition for writ of *certiorari* in the circuit court on April 17, 1990, praying that the decision of the commission be reversed. After hearing oral argument, Circuit Court Judge Sophia Hall entered an order on October 31, 1991, affirming the decision of the commission. Petitioner filed a timely notice of appeal from that order.

A reviewing court's scope of review of an agency's decision to discharge a public employee is a two-step process. First, the court must determine if the agency's findings of fact are contrary to the manifest weight of the evidence. (*Walsh v. Board of Fire & Police Commissioners* (1983), 96 Ill. 2d 101, 105, 449 N.E.2d 115, 117; *Department of Mental Health & Developmental Disabilities v. Civil Service Comm'n* (1981), 85 Ill. 2d 547, 550, 426 N.E.2d 885, 887.) Second, it must determine if the findings of fact provide a sufficient basis for the agency's conclusion that cause for discharge exists. (*Walsh*, 96 Ill. 2d at 105, 449 N.E.2d at 117; *Department of Mental Health & Developmental Disabilities*, 85 Ill. 2d at 551, 426 N.E.2d at 887.) An administrative tribunal's finding of "cause" for discharge commands the reviewing court's deference and should not be overturned unless it is arbitrary, unreasonable, or unrelated to the requirements of the service. (*Walsh*, 96 Ill. 2d at 105-06, 449 N.E.2d at 117; accord *Launius v. Board of Fire & Police Commissioners* (1992), 151 Ill. 2d 419, 435, 603 N.E.2d 447, 484.) This framework for reviewing a challenge to the decision of an administrative agency is identical whether it be reviewed under the Administrative Review Law (Ill. Rev. Stat. 1991, ch. 110, par. 3—101 *et seq.*) or the common law writ of *certiorari*. *Dubin v. Personnel Board* (1989), 128 Ill. 2d 490, 498, 539 N.E.2d 1243, 1246; *Smith v. Department of Public Aid* (1977), 67 Ill. 2d 529, 367 N.E.2d 1286; *Maddox v. Williamson County Board of Commissioners* (1985), 131 Ill. App. 3d 816, 822, 475 N.E.2d 1349, 1353-54.

I

The first issue in the case at bar is whether it was against the manifest weight of the evidence for the commission to decide that petitioner's conduct on September 8, 1989, constituted a violation of sections 1, 9, 22 and 24 of the Rules and Regulations. Factual findings made by an administrative tribunal are deemed *prima facie* true and and correct (Ill. Rev. Stat. 1989, ch. 110, par. 3—110; *Carver v. Band/Fayette/Effingham Regional Board of School Trustees* (1992), 146 Ill. 2d 347, 355, 586 N.E.2d 1273, 1277), and are thus deemed to be against the manifest weight of the evidence only where the opposite conclusion is clearly evident, or where it is unreasonable, arbitrary

and not based on the evidence. (*Maple v. Gustafson* (1992), 151 Ill. 2d 445, 454, 603 N.E.2d 508, 512-13.) Therefore, we will not find a factual determination to be against the manifest weight of the evidence unless there is a complete absence of facts in the record supporting the conclusion reached. *Allendorf v. Elgin, Joliet & Eastern Ry. Co.* (1956), 8 Ill. 2d 164, 171, 133 N.E.2d 288, 291; *Laird v. Illinois Central Gulf R.R. Co.* (1991), 208 Ill. App. 3d 51, 64-65, 566 N.E.2d 944, 951.

■ The testimony of Gauger, who stated that she observed petitioner verbally abusing and intimidating inmates throughout the night in question, was, in and of itself, sufficient for the commission to find that petitioner's conduct amounted to a violation of the applicable rules and regulations. While it is true that petitioner and another witness refuted Gauger's recollection of the evening's events, the commission did not believe that testimony, and it is by now axiomatic that a reviewing court is not to reevaluate the credibility of witnesses who testify before an administrative agency. (See, *e.g., Jackson v. Board of Review of the Department of Labor* (1985), 105 Ill. 2d 501, 513, 475 N.E.2d 879, 885; *East St. Louis School District No. 189 v. Hayes* (1992), 237 Ill. App. 3d 638, 646, 504 N.E.2d 557, 563.) Accordingly, we hold that the commission's determination that petitioner violated sections 1, 9, 22 and 24 of the Rules and Regulations was not against the manifest weight of the evidence.

II

We next determine whether the commission's decision that there was cause to terminate him was arbitrary, unreasonable or unrelated to his service. "Cause" has been defined as " 'some substantial shortcoming which renders [the employee's] continuance in his office or employment in some way detrimental to the discipline and efficiency of the service and something which the law and a sound public opinion recognize as good cause for his [discharge].' " *Walsh*, 96 Ill. 2d at 105, 449 N.E.2d at 117, quoting *Fantozzi v. Board of Fire & Police Commissioners* (1963), 27 Ill. 2d 357, 360, 189 N.E.2d 275, 277.

■ Petitioner first asserts that the commission's decision to terminate him was arbitrary and unreasonable because it was contrary to respondent's disciplinary action policy and procedure (Disciplinary Policy), which requires that discipline be administered progressively. (*Cf. Bell v. Civil Service Comm'n* (1987), 161 Ill. App. 3d 644, 651, 515 N.E.2d 248, 252 ("In disciplinary proceedings, a public body must comply with its own rules and an employee being disciplined is entitled to rely upon those rules").) We find petitioner's argument to be

baseless. First, he was in fact disciplined progressively, for on both August 3, 1987, and September 19, 1988, he was counselled in writing for using vulgar and inappropriate language while treating inmates. He was also suspended for 29 days for similar behavior which occurred on July 22, 1989. Accordingly, petitioner cannot successfully maintain that his discharge for the fourth incident which involved his addressing inmates with vulgar language and racial epithets was not "progressive."

Moreover, section E of the Disciplinary Policy provides:

> "Disciplinary Action for Major Cause infractions need not be progressive. Major Cause is defined as, but not limited to, the following behavior by an employee on duty or on the premises of any County facility:
>
> * * *
>
> 3. Patient, employee or visitor abuse."

Considering Gauger's testimony that petitioner told inmates to "sit your skinny ass down in that chair," "get your black ass over here," and "shut the fuck up," there is no question but that petitioner's conduct on September 8 constituted verbal abuse of inmates.

Petitioner further argues, citing *Batley v. Kendall County Sheriff's Department Merit Comm'n* (1981), 99 Ill. App. 3d 622, 425 N.E.2d 1201, and *Fox v. Illinois Civil Service Comm'n* (1978), 66 Ill. App. 3d 381, 383 N.E.2d 1201, that even if the commission did not violate the progressive discipline requirement, the infraction involved here was not sufficiently severe to constitute just cause for discharge. We disagree. In *Bately* and *Fox*, we held that based on the fact that the uses of profanity for which the plaintiffs were terminated were isolated incidents, the misconduct involved there did not warrant the severe sanction of discharge. In this case, however, we are presented with a situation in which petitioner has exhibited a continuous pattern of intimidating inmates with profane language. Quite simply, written warnings from his supervisors and a rather lengthy suspension have not deterred him from engaging in such inexcusable behavior; consequently, we cannot say that the commission's decision to impose discharge as the appropriate form of discipline was arbitrary or unreasonable.

For all of the foregoing reasons, we affirm the judgment of the trial court upholding the commission's discharge of petitioner.

Affirmed.

McCORMICK, P.J., and HARTMAN, J., concur.